## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANE DOE, | : | Case: 1:20−cv−01411  JURY DEMAND |
| | : | Assigned To : Boasberg, James E. |
| Plaintiff, | : | Assign. Date : 5/28/2020 |
| | : | Description: Employ. Discrim. (H−DECK) |
| v. | : | Civil Action No. |
| | : | |
| WILLIAM P. BARR, | : | |
| in his official capacity as | : | |
| ATTORNEY GENERAL OF THE | : | |
| UNITED STATES | : | |
| U.S. Department of Justice | : | |
| 950 Pennsylvania Avenue, NW | : | |
| Washington, DC 20530 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Jane Doe, by and through undersigned counsel, brings this Complaint against William P. Barr, in his official capacity as Attorney General of the United States, head of the U.S. Department of Justice, a component of which is the Federal Bureau of Investigation. In support thereof, upon personal knowledge, information, and belief, Plaintiff alleges the following:

### NATURE OF THE ACTION

1. Plaintiff Jane Doe was a career FBI employee, who began service June 9, 1996, and served in a number of roles as a Special Agent and an attorney, including in the Senior Executive Service ("SES"), before retiring December 31, 2017.

2. Plaintiff alleges she was discriminated against based on her sex, her age, and/or a combination of the two (sex-plus-age), when then-FBI General Counsel James Baker (1) demoted her from her position as Deputy General Counsel ("DGC") to Section Chief ("SC") in June 2015; (2) did not select her for another DGC position overseeing the National Security Law



RECEIVED
MAY 27  2020
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Branch; and (3) removed her from the SES in January 2016 based on a specious, inherently discriminatory evaluation of her performance.

3. Despite Plaintiff's stellar and consistent performance record over decades of service, Mr. Baker took the actions at issue here, ultimately resulting in Plaintiff's removal from the SES, acts of discrimination based on her sex, her age, and/or a combination of the two (sex-plus-age).

4. As justification, Mr. Baker proffered various generalized critiques of Plaintiff's performance that were so trivial that they cannot purport to be legitimate reasons, were vague and without any support, or were supported by officials whose credibility is dubious.

5. The justifications were predominantly minor administrative concerns, bearing virtually no relation to the Agency's law enforcement mission and Plaintiff's myriad contributions to those goals.

6. Other female members of the Office of General Counsel made similar claims of sex discrimination against Mr. Baker and other male OGC employees, but those complaints did not prevent those other officials from attaining career success.

7. FBI senior leadership is pervaded by a male-dominant culture, which rewards and protects male employees who engage in misconduct or performance missteps, while punishing female employees for far less severe matters.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because Plaintiff's causes of action arise under the Constitution and laws of the United States.

9. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e–16(c), because Plaintiff pursued a formal complaint of discrimination before an Administrative Judge of the U.S. Equal Employment Opportunity Commission which culminated in a notice of Plaintiff's right to pursue a complaint in U.S. District Court within 90 days of her receipt of the letter (*i.e.*, on or before May 27, 2020, thus this Complaint is timely filed).

10. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) and (e).

## PARTIES

11. Plaintiff Jane Doe is a citizen of the United States and resides in Alexandria, Virginia.

12. Plaintiff is a woman born in 1961.

13. Plaintiff was employed by the FBI from June 9, 1996 to December 31, 2017.

14. Defendant William P. Barr, serving as Attorney General of the United States, has his office in the District of Columbia. He is sued only in an official capacity as head of the Department of Justice, a component of which is the Federal Bureau of Investigation.

15. The Department of Justice is an Executive department, 5 U.S.C. § 101, and an "agency" within the meaning of 5 U.S.C. § 701. DOJ's principal offices are in the District of Columbia. FBI is a subordinate component of the DOJ pursuant to 28 C.F.R. § 0.1. FBI's principal offices are in the District of Columbia.

## STATEMENT OF FACTS

**A.    Plaintiff's Career with FBI**

16. Plaintiff entered on duty with the FBI on June 9, 1996 as a Special Agent.

17. During her tenure with the FBI, Plaintiff was an attorney.

18. From January 2008 until January 2015, Plaintiff was the GS-15 Chief Division Counsel ("CDC") of the FBI's Washington Field Office ("WFO"), which is the second-largest field office in the FBI.

19. The majority of CDCs are, like Plaintiff, FBI Agents.

20. As a CDC, Plaintiff was responsible for providing legal and policy advice to WFO executive management on a wide range of operational and administrative matters.

21. The facts alleged below detail the latter years of Plaintiff's career; Plaintiff retired from the FBI effective December 31, 2017.

**B.     Composition of Office of General Counsel.**

22. Mr. James Baker is a man born in 1961.

23. Mr. Baker was the FBI's General Counsel ("GC") during the time of the events underlying this case.

24. Mr. Baker became GC of the FBI in January 2014.

25. As GC, Mr. Baker was the Program Manager for the FBI's CDC Program.

26. When Mr. Baker assumed the GC position, there were four branches in OGC.

27. The four branches were the General Law Branch; the Investigative Law & Legal Training Branch ("ILTB"), the Litigation Branch, and the National Security Law Branch ("NSLB").

28. Each branch of OGC was led by a Deputy General Counsel ("DGC").

29. The DGC positions are Senior Executive Service ("SES") positions.

30. Each DGC reported directly to the GC.

  **C.** **Plaintiff's Selection for the ITLB DGC Position**

  31. In early June, OGC posted job announcements for the positions of DGC of NSLB and ITLB.

  32. Plaintiff submitted applications for both positions, as did a number of other candidates both male and female.

  33. Plaintiff interviewed for both DGC positions.

  34. Mr. Baker had a positive impression of Plaintiff during the interview and decided Plaintiff was a good fit for the ILTB position.

  35. Because the DGC position was an SES position, an SES selection board played a role in making a recommendation to the Director.

  36. The Director of the FBI has the final authority to select SES members for the FBI.

  37. Mr. Baker recommended to the SES Board that Plaintiff be selected for the ILTB DGC position.

  38. The SES Board agreed with Mr. Baker's recommendation and forwarded the recommendation to the FBI Director for his approval, which he granted.

  39. In early November 2014, Plaintiff was notified that she had been selected as DGC of ILTB.

  **D.** **NSLB DGC Selection**

  40. Mr. Baker was dissatisfied with the candidate pool for the DGC for NSLB position, so he canceled that Vacancy Announcement and decided to look into other ways to fill the position.

41. On January 12, 2015, Plaintiff received an email notice that the job announcement for the NSLB DGC position had been cancelled.

42. Mr. Baker requested Ms. Trisha Anderson apply for the position.

43. On December 17, 2014, Ms. Anderson was requested to submit her resume, which she did on January 6, 2015.

44. Because Ms. Anderson was already a member of the SES, she could be hired through a direct hire procedure.

45. On or around February 6, 2015, former FBI Director James Comey and other FBI executives interviewed Ms. Anderson.

46. On May 5, 2015, Mr. Baker sent an email to all of OGC announcing Ms. Anderson's selection as the DGC of NSLB, except that Plaintiff did not receive the May 5, 2015 email.

47. On May 6, 2015, one of Plaintiff's colleagues forwarded to Plaintiff a copy of Mr. Baker's May 5, 2015 email announcing that Ms. Anderson would be DGC of NSLB.

48. Ms. Anderson began work in the NLSB DGC position in June 2015.

49. At the time Ms. Anderson was selected as the NLSB DGC, she was less than 40 years of age.

### E.   FBI Demoted Plaintiff from Deputy General Counsel to Section Chief

50. Plaintiff started work in the ITLB DGC position in late January 2015.

51. This was Plaintiff's first position in the SES.

52. All SES employees are subject to a one-year probationary period.

53.     Around May 2015, Mr. Baker decided to combine ILTB and the General Law Branch into one branch and make other changes within OGC, including moving some units from one branch to another branch, creating new sections, and renaming some units.

54.     After the reorganization, OGC had three branches, rather than four; thus only three DGC slots remained.

55.     Mr. Baker determined who would fill the three DGC positions.

56.     Mr. Baker was known to disregard, and even physically withdraw away from, women who expressed strong opinions, and passed over women who attempted to provide input while accepting identical input from their male subordinates.

57.     By contrast, Mr. Baker did not mistreat women who approached him with a placid demeanor, as he evidently expected, while showing no such expectation of similarly situated male employees.

58.     On or around May 22, 2015, Mr. Baker informed Plaintiff that he was reorganizing OGC and that her position would be eliminated.

59.     Other managers, who had management problems, including male DGCs against whom other women had made complaints of discrimination or harassment, would retain their positions.

60.     Plaintiff was removed from the DGC position and placed in the position of SC of the Investigative Law and Training Section, which was a new section created during the reorganization.

61.     This Section Chief (SC) position is an SES position.

### F. Plaintiff's Removal from the SES

62. On September 11, 2015, HRD sent an email to Mr. Baker advising that it was the eighth month of Plaintiff's probationary period, and requesting that he complete an SES Probationary Period Performance Review checklist.

63. The review checklist asked the reviewer to select between three levels of performance: Level 1, Level 2, or Level 3.

64. A probationary SES employee must be assessed at Level 3 to successfully complete the probationary period.

65. On or around October 28, 2015, Mr. Baker rated Plaintiff as Level 2, "Minimally Satisfactory," on her performance review.

66. Mr. Baker drafted a six-page justification for the rating.

67. Mr. Baker wrote that Plaintiff had "failed to successfully transition to the SES" and that she "has not performed successfully as a leader or manager across the range of SES expectations—leading change, leading people, business acumen, building coalition, or being results driven."

68. The assessment cites some positive contributions Plaintiff made to OGC during her probationary period, but also provides examples of what Mr. Baker viewed as inadequate performance and poor judgment.

69. Plaintiff requested a higher level review of her performance rating.

70. DOJ's Senior Executive Review Board and former FBI Director James Comey upheld the rating.

71. Assistant Director of HRD James Turgal was responsible for carrying out Plaintiff's removal from the SES.

72. Mr. Turgal reviewed Mr. Baker's assessment of Plaintiff's performance during her probationary period and concluded there was sufficient justification for her removal.

73. Once she was removed from the SES, Plaintiff was effectively removed from the SC position.

74. Around March 2016, Plaintiff became the Unit Chief of the Terrorist Screening Center.

75. Plaintiff retired from the FBI effective December 31, 2017.

76. A male-dominant culture pervades senior leadership at FBI.

77. The male-dominant culture in senior FBI leadership includes protecting male officials who commit misconduct or have serious performance problems, and taking adverse actions against female employees for far less severe concerns.

78. Plaintiff's male colleagues, also in their probationary SES periods, committed serious missteps in their work were not removed from their positions, but were instead repositioned without a demotion.

**COUNT I: Non-Selection for Deputy General Counsel of National Security Branch
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***

79. The Paragraphs above are incorporated and reasserted as if fully set forth herein.

80. Plaintiff is a member of protected classes (sex, age, and a combination of sex-plus-age).

81. Plaintiff applied for, and was deemed qualified for, the Deputy General Counsel for the National Security Branch (DGC of NSLB) position.

82. Mr. Baker did not select Plaintiff for the DGC of NSLB position.

83. Instead, Defendant selected a woman who is not in the same age protected class as Plaintiff.

84. Plaintiff's qualifications were far superior to that of the selectee.

85. Mr. Baker's conduct and actions are indicative of discriminatory *animus* based on Plaintiff's sex, her age, and/or a combination of the two (sex-plus-age).

86. Defendant did not select Plaintiff for the DGC of NSLB position, which was an act of discrimination based on Plaintiff's sex, her age, and/or a combination of the two (sex-plus-age).

**COUNT II: Removal From Position of Deputy General Counsel**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***

87. The Paragraphs above are incorporated and reasserted as if fully set forth herein.

88. Plaintiff is a member of protected classes (sex, age, and a combination of sex-plus-age).

89. Defendant subjected Plaintiff to an adverse action when Mr. Baker demoted Plaintiff from DGC to SC.

90. Similarly situated male DGCs were treated more favorably during the June 2015 OGC reorganization.

91. Mr. Baker tolerated poor performance and performance-related misconduct by similarly situated male DGCs on a scale far worse than the performance allegations levied against Plaintiff.

92. Other women also experienced discriminatory treatment by Mr. Baker and the male DGCs similar to that which Plaintiff alleges.

93. Other women filed complaints of discrimination against Mr. Baker resulting from the reorganization of OGC.

94. Mr. Baker's purported reasons for Plaintiff's demotion are evidence of discriminatory bias.

95. Mr. Baker routinely criticized women for being too aggressive while condoning far more aggressive behavior by male employees, including that Mr. Baker evidently tolerated Mr. McNally's confrontational and, at times, violent interactions with others.

96. Defendant demoted Plaintiff from the DGC position to SC, which was an act of discrimination based on Plaintiff's sex, her age, and/or a combination of the two (sex-plus-age).

**COUNT III: Removal from Senior Executive Service
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***

97. The Paragraphs above are incorporated and reasserted as if fully set forth herein.

98. Plaintiff is a member of protected classes (sex, age, and a combination of sex-plus-age).

99. Defendant subjected Plaintiff to an adverse action, when on or about January 8, 2016, Defendant removed Plaintiff from the Senior Executive Service, ultimately resulting in her placement into a GS-15 position in the terrorist Screening Center.

100. In implementing and defending Plaintiff's removal from the SES, Defendant largely relied upon vague claims about Plaintiff's communication skills and performance (similar to those utilized for her demotion from DGC).

101. Mr. Baker did not articulate with any specificity what support he had for his purported concerns.

102. The real reason for the concerns was Mr. Baker's pervasive discrimination against older women, not Plaintiff's performance.

103. Defendant removed Plaintiff from the SES, which was an act of discrimination based on Plaintiff's sex, her age, and/or a combination of the two (sex-plus-age).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her:

A.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment.

B.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries.

C.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment.

D.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

E.      Injunctive relief, including an order requiring Defendant to reinstate Plaintiff to her Senior Executive Service position.

F.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law.

G.      Such other and further relief as allowed by law or that the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial before a jury.

Respectfully submitted,

Date:  May 27, 2020

/s/ Michael J. Kator
Michael J. Kator, D.C. Bar No. 366936
Daniel Clark, D.C. Bar No. 156052
KATOR, PARKS, WEISER & HARRIS, PLLC
1200 18th Street, N.W., Suite 1000
Washington, D.C.  20036
Phone: (202) 898-4800
Fax: (202) 289-1389
mkator@katorparks.com
dclark@katorparks.com
*Attorneys for Plaintiff*