UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARCIANN GRZADZINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1411 (JEB) |
| | ) | |
| MERRICK GARLAND, | ) | |
| Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MOTION FOR SUMMARY JUDGMENT**

Defendant respectfully moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.   The grounds for this motion are set forth more fully in the accompanying Memorandum of Points and Authorities and Statement of Material Facts not in Dispute.   A proposed order is attached.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARCIANN GRZADZINSKI,      ) | |
|       ) | |
|      Plaintiff,     ) | |
|       ) | |
|    v.       ) | Civil Action No. 20-1411 (JEB) |
|       ) | |
| MERRICK GARLAND, in his official   ) | |
| capacity as Attorney General of the United ) | |
| States,       ) | |
|       ) | |
|      Defendant.     ) | |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7(h), Defendant submits this statement of material facts not in genuine dispute in support of its motion for summary judgment.

1.  Mariciann Grzadzinski ("Grzadzinksi" or "Plaintiff") (year of birth 1961) is a former employee of the Federal Bureau of Investigation ("FBI").  (Grzadzinski Dep. at 196-97; Am. Compl. ¶ 12)

2.  Grzadzinski entered on duty with the FBI on June 9, 1996 as a Special Agent and, during her tenure with the FBI, was a licensed attorney.   (Grzadzinski Dep. at 11, 90; Ex. 1 to Glickson Decl. at GRZ_FBI002655)

3.  Plaintiff retired from the FBI effective December 31, 2017.  (Am. Compl. ¶ 1)

4.  From January 2008 until January 2015, Plaintiff held a GS-15 position as the Chief Division Counsel of the FBI's Washington Field Office.  (Grzadzinski Dep. at 11)

## **Plaintiff's Selection for the Deputy General Counsel Position**

5.      On June 3, 2014, the FBI's Office of General Counsel ("OGC") posted a job announcement for the position of Deputy General Counsel of the National Security Law Branch. (Ex. 2 to Glickson Decl. at GRZ_FBI002578R)

6.      On or around the same date, OGC posted a job announcement for the position of Deputy General Counsel of the Investigative Law and Legal Training Branch.  (Grzadzinski Dep. at 17)

7.      At the time of these announcements, there were four branches in OGC, all of which were led by a Deputy General Counsel, which was a Senior Executive Service ("SES") level position, reporting to the General Counsel.  (Am. Compl. ¶¶ 27-30)

8.      The four branches were: the Investigative Law and Legal Training Branch; the Litigation Branch; the National Security Law Branch and the General Law Branch.

9.      James Baker became General Counsel of the FBI in January 2014 and the two Deputy General Counsel positions that were being announced would report to him.  (Am. Compl. ¶ 24)

10.     Plaintiff submitted applications for both of the Deputy General Counsel positions that were being advertised.  (Grzadzinski Dep. at 17)

11.     Because the Deputy General Counsel position was part of the SES, an SES selection board was responsible for making a recommendation to the FBI Director, who had final authority to make the selection.  (Baker Dep. at 37, 197)

12.     After speaking with Plaintiff's then-supervisor, Mr. Baker determined that he wanted to interview Plaintiff. (Ex. 3 to Glickson Decl.  at GRZ_FBI002556)

13.     On October 29, 2014, Plaintiff was interviewed by General Counsel Baker, Ernest Babcock (Deputy General Counsel of the General Law Branch), and Tom Bondy (Deputy

General Counsel of the Litigation Branch).  (Ex. 3 to Glickson Decl. at GRZ_FBI002559;

Grzadzinski Dep. at 18)

14.     The interview was intended as an interview for both DGC positions.  (Babcock

Dep. at 23; Schoolmaster Dep. at 35)

15.     Mr. Baker thought Plaintiff was a better fit for the Investigative Law and Legal

Training Branch position than the National Security Law Branch position based on her

experiences as Chief Division Counsel at the Washington Field Office and because he believed

her experience as an agent would be relevant to the subject areas over which she would have

responsibility in the Investigative Law and Legal Training Branch.  (Baker Dep. at 33-34)

16.     The prior Deputy General Counsel of that branch was an agent and had

recommended to Mr. Baker that he continue to have an agent in that position.  (Baker Dep. at 34-

35)

17.     Plaintiff testified that she would have been equally happy to get either Deputy

General Counsel position, but that she "enjoy[ed] the investigative law side a bit more."

(Grzadzinski Dep. at 17-18)

18.      Mr. Baker recommended to the FBI's SES Board that it approve Plaintiff's

selection for the Investigative Law and Legal Training Branch position.  (Baker Dep. at 197;

Babcok Dep. at 26-27; Baker Decl. ¶ 3)

19.     The SES Board agreed with Mr. Baker's recommendation and submitted it to the

Director of the FBI for his approval, which he granted.  (Baker Decl. ¶ 3)

20.     In early November, 2014, Plaintiff was notified that she had been selected as

Deputy General Counsel of the Investigative Law and Legal Training Branch.  (Grzadzinski

Decl. at 2)

21.     A different female employee, Trisha Anderson, ultimately was selected as the Deputy General Counsel of the National Security Law Branch.  (Ex. 4 to Glickson Decl.)

22.     In selecting a Deputy General Counsel for the National Security Law Branch, Mr. Baker was looking for someone who could "engage at the highest levels with the highest levels of complexity and intellectual challenge, with the Justice Department, with the intelligence community, with the U.S. military, with the White House, with the Commerce Department, with a whole range of actors inside the government, with Capitol Hill" and believed the FBI "needed topnotch legal advice on these questions."  (Baker Dep. at 169)

23.     Mr. Baker had previously worked with Ms. Anderson "on a variety of highly complicated, very difficult national security matters, including a number of very challenging cyber matters," and knew that she had a highly favorable reputation in the national security field. (Baker Dep. at 145, 169-70)

24.     In December 2014, Mr. Baker's Chief of Staff (Justin Schoolmaster) asked Ms. Anderson to submit a resume.  (Ex. 5 to Glickson Decl.)

25.     Because Ms. Anderson was already a member of the SES, she could be hired through a direct hire procedure.  (Baker Dep. at 152:8-22)

26.     On January 12, 2015, Plaintiff was notified that the vacancy announcement for the National Security Law Branch position had been canceled and, four days later, Mr. Schoolmaster contacted the Human Resources Division to request authority to direct hire Ms. Anderson.  (*See* Ex. 5 to Glickson Decl.; *id.* Ex. 6; Schoolmaster Dep. at 11-12)

27.     On or around February 6, 2015, Ms. Anderson was interviewed by then FBI-Director James Comey and other FBI executives.  (Ex. 7 to Glickson Decl.)

28.     As of February 25, 2015, Ms. Anderson's hire was pending with the FBI's Security Division for the required background check.  (Ex. 8 to Glickson Decl.)

29.     On May 5, 2015, Mr. Baker sent an email to all of OGC announcing that Trisha Anderson had been selected as the Deputy General Counsel of the National Security Law Branch.  (Am. Compl. ¶ 46; Ex. 4 to Glickson Decl.).

30.     On Wednesday, May 6, 2015, one of Plaintiff's colleagues forwarded to Plaintiff a copy of Mr. Baker's May 5, 2015 email announcing that Ms. Anderson would be the Deputy General Counsel of the National Security Law Branch.  (Am. Compl. ¶ 47; Ex. 4 to Glickson Decl.)

31.     Plaintiff first contacted an EEO counselor on Wednesday, June 24, 2015.  (Ex. 9 to Glickson Decl.)

### Plaintiff's Performance Problems As Deputy General Counsel

32.     Plaintiff started in the position of Deputy General Counsel in the Investigative Law and Legal Training Branch on or about January 26, 2015.  (Am. Compl. ¶ 50; Grzadzinksi Dep. at 41)

33.     Because this was her first position in the SES (Grzadzinsi Dep. at 38:12), she was subject to a one-year probationary period.  (Ex. 10 to Glickson Decl.; Grzadzinski Dep. at 40)

34.     Mr. Baker told Plaintiff that it was his expectation that she provide him with more feedback and information than she may have provided her supervisor in her prior position. (Grzadzinski Dep. at 66; Baker Dep. at 190-92)

35.     Plaintiff had difficulty adjusting to Mr. Baker's expectation that she provide him with more information and feedback, acknowledging that she had a "learning curve" in meeting that expectation.  (Grzadzinski Dep. at 66-67; Baker Dep. at 192)

36.     By March 2015, Mr. Baker had raised performance issues with Plaintiff, advising her at that time of his "disappointment" with her performance, and that he had expected she would have "'hit the ground running.'"  (Grzadzinski Decl. at 3).

**OGC Reorganization**

37.     From almost his first day in the job as General Counsel, Mr. Baker began considering reorganizing OGC.  (Baker Dep. at 39; Babcock Dep. at 79)

38.     In or around May-June 2015, Mr. Baker decided, among other things, to combine the Investigative Law and Legal Training Branch and the General Law Branch into one branch. (Baker Decl. ¶ 5; Schoolmaster Dep. at 68-69; Baker Dep. at 44, 50-52).

39.     Mr. Babcock, the Deputy General Counsel of the General Law Branch, became the Deputy General Counsel of the newly formed Investigative and General Law Branch.  (Baker Decl. ¶ 8; Am. Compl. ¶ 60)

40.     Mr. Baker thought Plaintiff was struggling in her role as Deputy General Counsel and that she would be more successful in a position with fewer responsibilities (Baker Dep. at 47, 57; Baker Decl. ¶¶ 7-8), and also considered that Plaintiff was the most junior Deputy General Counsel at the time of the reorganization.  (Baker Dep. at 57)

41.     In late June 2015, with her Deputy General Counsel position eliminated as a result of the reorganization, Plaintiff was placed in the position of Section Chief of the Investigative Law and Training Section reporting to Mr. Babcock.  (Grzadzinski Dep. at 109; Baker Decl. ¶ 8; Grzadzinski Decl. at 6).

42.     When Plaintiff was moved from the Deputy General Counsel to the Section Chief position, she remained at the SES level, her salary did not change, and she remained in the same office.  (Grzadzinski Dep. at 110; Baker Dep. at 100; Baker Decl. ¶ 9)

43.     When Plaintiff was removed from the Deputy General Counsel position, she was the only Deputy General Counsel in a probationary period.  (Grzadzinski Dep. at 118-19).

**Plaintiff's Removal from the SES**

44.     In October 2015, Mr. Baker prepared a probationary period performance review
for Plaintiff, which required the reviewer to select between three levels of performance: Level 1,
Level 2, or Level 3.  (Ex. 10 to Glickson Decl.; Am. Compl. ¶¶ 63, 65)

45.     A probationary SES employee must be assessed at Level 3 to successfully
complete the probationary period.  (Am. Compl. ¶ 64)

46.     Mr. Baker assessed Plaintiff's performance at Level 2.  (Attachment to Baker
Decl. at GRZ_FBI000082; Am. Compl. ¶ 65)

47.     The standard for Level 2 is: "The executive's contributions to the organization are
acceptable in the short term but do not appreciably advance the organization towards
achievement of its goals and objectives.  While the executive generally meets established
performance expectations, timelines and targets, there are occasional lapses that impair
operations and/or cause concern from management.  While showing basic ability to accomplish
work through others, the executive may demonstrate limited ability to inspire subordinates to
give their best efforts or to marshal those efforts effectively to address problems characteristic of
the organization and its work."  (Attachment to Baker Decl. at GRZ_FBI00082)

48.     Mr. Baker concluded that Plaintiff's performance during her probationary period
was unacceptable and recommended that she be removed from the SES and offered a position in
the FBI at the GS-15 level.  (Attachment to Baker Decl. at GRZ_FBI000082)

49.     In October 2015, Mr. Babcock also rated Plaintiff "Minimally Satisfactory" on
her performance review.  (Ex. 12 to Glickson Decl.)

50.     Plaintiff requested that her rating be upgraded to Achieved Results, but DOJ's
Senior Executive Review Board as well as former FBI Director James Comey upheld the rating.
(Ex. 13 to Glickson Decl; Grzadzinski Decl. at GRZ_FBI00072)

51.     Because Plaintiff was determined to have failed to successfully complete her probationary period, and with the concurrence of the FBI Director in that assessment, she was removed from the SES.  (Turgal Decl. at 5)

52.     Once she was removed from the SES, Plaintiff was effectively removed from the Section Chief position.  (Baker Dep. at 100-01)

53.     In or around March 2016, Plaintiff became the Unit Chief of the Terrorist Screening Center.  (Grzadzinski Dep. at 121-22).

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: __/s/ Jeremy S. Simon_____
JEREMY S. SIMON
D.C. Bar No. 447956
Assistant United States
Attorney555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARCIANN GRZADZINSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MERRICK GARLAND, | ) |
| Attorney General, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 20-1411 (JEB)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff is a former employee of the Federal Bureau of Investigation ("FBI"), who alleges she was discriminated against based on her sex and age (born in 1961) when FBI General Counsel James Baker: (1) failed to select her as Deputy General Counsel of the National Security Law Branch in the FBI's Office of General Counsel ("OGC") but instead recommended her to be Deputy General Counsel of an equivalent branch (the Investigative Law and Legal Training Branch) within the same office, a position that she accepted; (2) allegedly "demoted" her from her position as Deputy General Counsel of OGC's Investigative Law and Legal Training Branch and assigned her to a Section Chief position within OGC; and (3) removed her from the Senior Executive Service ("SES") and placed her back into a GS-15 position based on a failure to satisfactorily complete her one-year SES probationary period. (Am. Compl. ¶ 2) Summary judgment should be granted to Defendant on each of these claims.

As discussed more fully below, Plaintiff's non-selection claim fails because it was not timely raised with an Equal Employment Opportunity counselor, does not constitute an adverse employment action given her contemporaneous selection to an equivalent Deputy General

Counsel position, and, to the extent based on gender discrimination, also fails because the selectee to the National Security Law Branch position was the same sex as Plaintiff.  In addition, Plaintiff has failed to establish that the legitimate, non-discriminatory reason for her non-selection—*i.e.*, her contemporaneous selection to another Deputy General Counsel position to which she had applied and the selectee's better qualifications for the National Security Law Branch position—was a pretext for discrimination.

Plaintiff's alleged "demotion" from the Deputy General Counsel position to a Section Chief position, moreover, was the result of a reorganization of two branches of OGC (the Investigative Law and Legal Training Branch and the General Law Branch) into a single branch, requiring that the position of Deputy General Counsel of one of the branches be eliminated.   The more experienced, incumbent Deputy General Counsel for the General Law Branch was chosen to head the newly merged branch, resulting in Plaintiff's position being changed from Deputy General Counsel to Section Chief without a change in grade or pay.  Plaintiff, who was struggling to perform during her probationary period, has failed to establish that the legitimate, non-discriminatory reason for eliminating her position, rather than that of a more experienced colleague, was a pretext for discrimination.

Finally, Plaintiff was removed from the SES because she failed to perform satisfactorily during the one-year probationary period to which she was subject as a new hire into the SES. Plaintiff also has failed to establish that the reasons for her removal were pretextual.   For these reasons, as set forth more fully below, summary judgment should be granted in Defendant's favor as to all of Plaintiff's claims.

## **FACTUAL BACKGROUND**

Defendant refers the Court to and fully incorporates herein Defendant's Statement of Undisputed Material Facts ("SOF").

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the nonmoving party, in determining whether there exists a genuine issue of material fact. *Anderson*, 477 U.S. at 255. The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. Indeed, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative," summary judgment should be granted. *Id*. at 249-50 (citations omitted).

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Claims alleging disparate treatment are analyzed at the summary judgment stage pursuant to the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  However, in this Circuit, where the employer sets forth a legitimate non-discriminatory reason for the challenged personnel decision, the district court need not examine whether the plaintiff established a *prima facie* case of discrimination.  *Brady v. Off. of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  In *Brady,* the D.C. Circuit found that, in the typical case, "the district court must resolve one central question:  Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?"  *Id.* at 494, 494 n. 2.

Thus, once the employer has articulated a legitimate, non-discriminatory reason for its actions, the *prima facie* inference of discrimination drops from the case.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507, 510-11 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).  The burden then shifts back to the plaintiff to show that the employer's proffered reason was not the true reason for its actions and was only a pretext for unlawful discrimination.  *Burdine*, 450 U.S. at 253; *see also St. Mary's Honor Ctr.*, 509 U.S. at 507-08; *Colbert v. Tapella*, 649 F.3d 756, 758-59 (D.C. Cir. 2011); *Brady*, 520 F.3d at 494; *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998).

*Brady,* however, does not render the *prima facie* case analysis unnecessary in all circumstances.   A plaintiff still must have suffered an adverse employment action to state a claim and still bears the burden of proving that the challenged employment action was the result of intentional discrimination.  *See Gilbert v. Napolitano*, 670 F.3d 258, 262 (D.C. Cir. 2012) (engaging in analysis of *prima facie* case—on the issue of causation—after finding factual

dispute on the question of pretext); *Taylor v. Mills*, Civ. A. No. 10-1077 (BAH), 2012 U.S. Dist. LEXIS 135792, at *41-42 (D.D.C. Sept. 24, 2012) (even when a defendant has presented a legitimate, non-discriminatory reason for an employment action, "the Court must still 'analyze first whether the [action taken] was a sufficiently adverse action to support a claim under Title VII.'"). The burden of persuasion that discrimination motivated the employer's actions remains at all times with the plaintiff.  *St. Mary's Honor Ctr.*, 509 U.S. at 507; *Burdine*, 450 U.S. at 253; *Aka*, 156 F.3d at 1289.

## ARGUMENT

### I.    Summary Judgment Should Be Granted On Plaintiff's Non-Selection Claim

In late 2014, Plaintiff applied for two equivalent Deputy General Counsel positions within the FBI's Office of General Counsel:  Deputy General Counsel for the Investigative Law and Legal Training Branch and Deputy General Counsel for the National Security Law Branch. Plaintiff was interviewed for both positions and, based on her prior experience, was considered the best qualified candidate for the Investigative Law and Legal Training Branch position.  She assumed that position in late January 2015.  Another female candidate, Trisha Anderson, ultimately was selected as Deputy General Counsel for the National Security Law Branch position.  Plaintiff alleges that her non-selection to the National Security Law Branch position was the result of discrimination based on her sex and age.  Defendant should be granted summary judgment on that claim for several reasons.

#### A.    Plaintiff's Claim Is Untimely

Plaintiff learned of her non-selection to the National Security Law Branch position when, in November 2014, she was selected instead to the Investigative Law and Legal Training Branch position (Grzadzinski Decl. at 2) and when she was notified on January 12, 2015 that the National Security Law Branch vacancy announcement to which she had applied had been

cancelled.[1]  (Ex. 6 to Glickson Decl.)  Plaintiff, however, did not initiate Equal Employment

Opportunity counseling until June 24, 2015 (SOF ¶ 31), over 45 days after she had learned of her

non-selection.

The EEOC's regulations provide that "aggrieved" employees or applicants for

employment who allege they have been discriminated against must first consult an agency EEO

counselor before filing a complaint of discrimination and must do so within 45 days of the

"matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the

effective date of the action."  29 C.F.R. § 1614.105(a)(1).  Exhaustion of administrative remedies

is a prerequisite to bringing suit in federal court.  *Hill v. Kempthorne*, 577 F. Supp. 2d 58, 64

(D.D.C. 2008) ("A federal employee alleging retaliation in violation of Title VII must timely

exhaust his or her administrative remedies.") (collecting cases); *Williams v. Munoz*, 106 F. Supp.

2d 40, 42 (D.D.C. 2000) ("A timely administrative charge is a prerequisite to initiation of a Title

VII action.").   Administrative exhaustion also is required for claims brought under the ADEA.

*See, e.g., Gilbert v. Napolitano*, 958 F. Supp. 2d 9, 12 (D.D.C. 2013); *Nguyen v. Mabus*, 895 F.

Supp. 2d 158, 171 (D.D.C 2012); *Johnson v. District of Columbia*, 572 F. Supp. 2d 94, 102

(D.D.C. 2008); *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir.

1998); *but see Rann v. Chao,* 346 F.3d 192, 196 (D.C. Cir. 2003) (noting some diverging

authority as to when exhaustion is required under the ADEA but not reaching the issue); *see also*

29 U.S.C. § 633a(d).

---

[1]     After the vacancy announcement was cancelled, the FBI initiated a direct hire process
and selected Trisha Anderson to the National Security Law Branch position.   (SOF ¶¶ 26-28)
Ms. Anderson's selection was announced on May 5, 2015, and Plaintiff learned of Ms.
Anderson's selection by May 6, 2015.   (Am. Compl. ¶ 47; Ex. 4 to Glickson Decl.)   Even were
May 6, 2015 deemed to be the operative date for the running of the 45-day period to contact an
EEO counselor, Plaintiff waited until June 24, 2015 to initiate the EEO process, which was more
than 45 days from May 6, 2015.

Accordingly, because Plaintiff failed to contact an EEO counselor within 45 days of learning of her non-selection to the National Security Law Branch position, Plaintiff's claim challenging that non-selection is untimely.   Summary judgment should thus be granted on the non-selection claim on that basis alone.

### B.      Plaintiff Has Failed To Establish A Prima Facie Case

Plaintiff has the initial burden of establishing a *prima facie* case of discrimination, which necessitates first showing that she suffered an adverse employment action. *Chambers v. Sebelius*, Civ. A. No. 13-0544 (CKK), 2013 U.S. Dist. LEXIS 181577, at *22 (D.D.C. Dec. 31, 2013) (citing *Evans v. Sebelius*, 716 F.3d 617, 619 (D.C. Cir. 2013)); *see also Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 (D.D.C. 2009).   Plaintiff also must establish that an individual outside her protected class was selected for the position. *Cones v. Shalala*, 199 F.3d 512, 517 (D.C. Cir. 2000).  Here, Plaintiff has failed to establish that she suffered an adverse employment action when she was selected for one of the two equivalent Deputy General Counsel positions to which she applied.  Because the selectee to the other position was female, Plaintiff also has failed to plausibly allege that her non-selection to that position was the result of gender discrimination.

An "adverse employment action" is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Douglas v. Donovan,* 559 F.3d 549, 552 (D.C. Cir. 2009).  In late 2014, vacancy announcements went out at the same time for a Deputy General Counsel position for the National Security Law Branch and Investigative Law and Legal Training Branch, both of which were branches within the FBI's Office of General Counsel. (Grzadzinski Dep. at 17)  Plaintiff applied to both positions and, although she "enjoy[ed] the investigative law side a bit more," she would have been equally happy to get either position.  (*Id*. at 18)  Of the two, Plaintiff was selected for the Investigative Law and Legal Training Branch

position.  Having been selected to one of the two equivalent positions to which she applied,

Plaintiff cannot contend that her non-selection to the National Security Law Branch position was

an adverse employment action.  *See, e.g.*, *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d

263, 268-69 (3d Cir. 2015).

Moreover, even if her non-selection could be considered an adverse employment action,

she cannot claim that her non-selection was the result of gender discrimination when the ultimate

selectee for the National Security Law Branch position also was female.  *Cones*, 199 F.3d at 517

("'where sex discrimination in promotion is alleged, a plaintiff proves her prima facie case by

showing that she is female, that she was refused a position for which she applied and was

qualified, and that the employer filled the position with a male.'")

Defendant recognizes that Plaintiff also asserts that her protected class is a "combination

of sex-plus-age."  (Am. Compl. ¶ 98)  It does not appear that the D.C. Circuit has recognized

such a combined protected class spanning two different statutes.  Moreover, recognizing such a

mixed protected class would improperly blur well-established differences between Title VII and

the ADEA, including with respect to the standard of causation, which is stricter under the

ADEA, and the unavailability of a jury trial under the ADEA.[2]   Consequently, this Court should

decline to recognize the "sex-plus-age" protected class alleged by Plaintiff.  *See, e.g.*, *Best v.*

*Johnson*, Civ. A. No. 15-00086, 2018 WL 4145921, at *2 (N.D. Miss. Aug. 30, 2018).

Nevertheless, to the extent any such mixed protected class is recognized, the ultimate

question for Plaintiff's Title VII claims remains "whether the employer took an adverse

employment action *at least in part* because of an employee's sex."  *Chadwick v. WellPoint, Inc.*,

---

[2]      A "but for" causation standard applies under the ADEA as compared to a "motivating
factor" standard under Title VII.  *Gross v. FBL Fin. Servs*, 557 U.S. 167, 175-76 (2009).  A jury
trial, moreover, is not available for a claim against the government under the ADEA.  *Cuddy v.*
*Carmen*, 694 F.2d 853, 859 (D.C. Cir. 1982).

561 F.3d 38, 43 (1st Cir. 2009) (emphasis in original).  Here, the individual who allegedly acted

with discriminatory animus in the non-selection of Plaintiff to the National Security Law Branch

position—Mr. Baker—was the same individual who recommended Plaintiff for the equivalent

Investigative Law and Training Branch position.  (SOF ¶¶ 18, 26)   Consequently, to the extent a

sex-plus-age claim is even cognizable, Plaintiff has failed to plausibly raise an inference to

support such a claim when Mr. Baker treated Plaintiff and Ms. Anderson similarly by

recommending them both to Deputy General Counsel positions. His similar treatment of women

of different ages negates any inference of gender or age bias.  *Elion v. Jackson*, 544 F. Supp.

2d 1, 8-9 (D.D.C. 2008).

### C.   Plaintiff Has Failed To Establish That The Proffered Legitimate, Non-Discriminatory Reason Is A Pretext For Discrimination

In a non-selection case, an employer "must proffer admissible evidence showing a

legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions."

*Figueroa v. Pompeo*, 923 F.3d 1078, 1092 (D.C. Cir. 2019).  "The key question in this context

'is not the correctness or desirability of the reasons offered but whether the employer honestly

believes in the reasons it offers.'"  *Hairston v. Vance-Cooks*, 773 F.3d 266, 273 (D.C. Cir.  2014)

(quoting *Fischbach* v. *D.C. Dep't of Corr.,* 86 F.3d 1180, 1183 (D.C. Cir. 1996)).  Moreover,

"[c]ourts must defer to the employer's decision as to which qualities required by the job

(substantive versus managerial) it weighs more heavily."  *Barnette v. Chertoff*, 453 F.3d 513,

517 (D.C. Cir. 2006).

The FBI did not select Plaintiff Deputy General Counsel of the National Security Law

Branch because it selected her to be Deputy General Counsel of the Investigative Law and Legal

Training Branch instead.   Plaintiff submitted applications for both positions and was

interviewed on October 29, 2014 for both positions.[3]  (Grzadzinski Dep. at 17; Babcock Dep. at 23; Ex. 3 to Glickson Decl.)

   Mr. Baker believed Plaintiff's qualifications and experience were better suited to the Investigative Law and Legal Training Branch position.  (Baker Dep. at 33-34)  Specifically, as the Chief Division Counsel of the Washington Field Office, Plaintiff would have had responsibilities with a portfolio relating to the investigation of ongoing criminal matters, which overlaps with the portfolio of the Investigative Law and Training Branch.  (*Id.*)  He also believed her experience as a Special Agent would be relevant to the subject areas over which she would have responsibility in the Investigative Law and Legal Training Branch.  (*Id.* at 34)  Indeed, the prior incumbent in that position (Elaine Lammert) was an agent and recommended that her replacement also be an agent.  (*Id.* at 34-35)   Plaintiff thus was selected for the Investigative Law and Legal Training Branch position in November 2014.  (SOF ¶ 20)

   At that time, the National Security Law Branch vacancy was not yet filled, and in December 2014, Mr. Baker's Chief of Staff (Justin Schoolmaster) reached out to Trisha Anderson (with whom Mr. Baker had previously worked) and asked her to submit a resume, which she provided on January 6, 2015.  (Ex. 5 to Glickson Decl.).   Shortly thereafter, the job announcement for the National Security Law Branch position was canceled (Ex. 6 to Glickson Decl.) and Mr. Baker's office began the process of hiring Ms. Anderson to that position through a direct hire procedure.  (Ex. 5 to Glickson Decl.)  That procedure was available because Ms. Anderson already was at the SES level.  (Am. Compl. ¶ 44)

---

[3]    Although Plaintiff testified at her deposition that she believed she only was being interviewed for the Investigative Law and Legal Training Branch position, she acknowledged that it was possible that the interview was for both positions.  (Grzadzinski Dep. at 20)  Accordingly, there is no genuine dispute that she was interviewed on October 29, 2014 for both positions.  (Babcock Dep. at 23)

Even if Plaintiff still considered herself a candidate for the National Security Law Branch position until the vacancy announcement was cancelled in January 2015 (despite her selection to the other Deputy General Counsel position), Ms. Anderson was more qualified for the position than Plaintiff.   Mr. Baker had previously worked with Ms. Anderson on complex national security and cyber security matters and knew she was highly regarded in the national security field.  (SOF ¶ 23).

Plaintiff admits that she lacked knowledge of Ms. Anderson's qualifications (Grzadzinksi Dep. at 130-32), and thus her contention that Ms. Anderson lacked relevant experience reflects only her opinion, not competent evidence.   (*Id.* at 133-34)  Plaintiff's opinion as to what experience should have been considered most relevant is likewise immaterial. *Jackson v. Gonzales,* 496 F.3d 703, 709 (D.C. Cir. 2007) ("Particularly given the dynamic nature of the hiring process, moreover, we have also stated that we will not second-guess how an employer weighs particular factors in the hiring decision.")

The record, moreover, establishes that Ms. Anderson was well qualified for the position. After graduating from Yale University and Harvard Law School, clerking on the Sixth Circuit, and working in private practice, Ms. Anderson worked in Justice Department's Office of Legal Counsel and, in that capacity, worked with Mr. Baker (at the time, Associate Deputy Attorney General in the Office of the Deputy Attorney General) on highly complex national security and cyber matters.  (Baker Dep. at 145; Ex. 14 to Glickson Decl.)    Mr. Baker then recommended Ms. Anderson for a clerkship with Justice Elena Kagan on the Supreme Court  (Baker Dep. at 153) and, after completing her Supreme Court clerkship, Ms. Anderson returned to the Justice Department, where she worked with Mr. Baker in the Deputy Attorney General's office and eventually succeeded Mr. Baker as Associate Deputy Attorney General for national security and cybersecurity issues, which was an SES position.  (Baker Dep. at 153; Ex. 14 to Glickson Decl.)

In 2014, she became Assistant General Counsel for Enforcement & Intelligence, an SES position, at the Department of the Treasury in which she supervised approximately 50 attorneys. (Ex. 14 to Glickson Decl.)

Plaintiff has failed to establish that she was more qualified than Ms. Anderson, let alone significantly so.  Although Plaintiff had experience in national security matters, Ms. Anderson also had experience in that area.  Moreover, other aspects of Plaintiff's experience were not comparable to that of Ms. Anderson.  As Chief Division Counsel, Plaintiff supervised between seven and 28 employees (Ex. 1 to Glickson Decl. at GRZ_FBI002658) as compared to the approximately 50 supervised by Ms. Anderson.   In addition, Ms. Anderson already had been successfully performing at the SES level, whereas Plaintiff held a GS-15 at the time of her application.   Although Plaintiff was an agent, and Ms. Anderson was not, being an agent was not a requirement for the National Security Law Branch position.  (Grzadzinksi Dep. at 134; Ex. 2 to Glickson Decl.)

Where an employee relies on an alleged qualifications gap as the basis for pretext, the gap between the candidates must be "substantial" and reflect a "stark superiority of credentials" to give rise to an inference of discrimination.  *Porter v. Shah*, 606 F.3d 809, 815-16 (D.C. Cir. 2010); *see also Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) ("The qualifications gap must be great enough to be inherently indicative of discrimination."); *Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012) ("a disparity in qualifications, standing alone, can support an inference of discrimination only when the qualifications gap is 'great enough to be inherently indicative of discrimination' – that is, when the plaintiff is 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than the successful candidate.").

Here, even taking all inferences in favor of Plaintiff, the record fails to establish a "stark superiority of credentials" required to give rise to an inference of discrimination. To the contrary, it demonstrates at most a "close call" between the two candidates, which is insufficient to defeat summary judgment. *Barnette*, 453 F.3d at 518.

Plaintiff's assertion of pretext, moreover, is "seriously undercut" by Mr. Baker's favorable treatment of Plaintiff in ensuring that she received an interview for the Deputy General Counsel positions[4] and in recommending her for the Investigative Law and Legal Training position. *Waterhouse v. District of Columbia,* 298 F.3d 989, 996 (D.C. Cir. 2002) (alleged evidence of pretext "seriously undercut" by favorable treatment by decisionmaker); *Vatel v. Alliance of Auto. Mfrs.,* 627 F.3d 1245, 1247 (D.C. Cir. 2011) (prior favorable treatment by same decisionmaker creates a "significant hurdle" for plaintiff).

Importantly, Mr. Baker did not recommend for the position a male employee who had been serving as Acting Deputy General Counsel for the National Security Law Branch and who Plaintiff considered well qualified for the position. (Grzadzinski Dep. at 190-91; Baker Dep. at 60-61)  Thus, his favorable treatment of a female (Ms. Anderson) over a male who held the position in an acting capacity also undermines any contention that the selection was motivated by discrimination towards females.

Mr. Baker also was born the same year as Plaintiff (1961) (Baker Decl. ¶ 1), which negates any suggestion that age discrimination motivated his decisionmaking. *See Aka*, 156 F.3d

---

[4]    Mr. Baker initially was not aware of Plaintiff's candidacy because her resume had not been forwarded to him because the previous Deputy General Counsel of the Investigative Law and Training Branch (Elaine Lammert) did not think Plaintiff was worthy of an interview. (Ex. 3 to Glickson Decl.; Baker Dep. at 34))  As contemporaneous emails reflect, Mr. Baker went out of his way to see that Plaintiff was interviewed for the position even though it required that the rankings that already had been submitted to the SES board be "pull[ed] back." (Ex. 3 to Glickson Decl.)

at 1291 (weak evidence of pretext can be negated when hiring officer is a member of the same

minority group as plaintiff); *see also Orgain v. City of Salisbury*, Civ. A. No. 07-1698, 2008 U.S.

App. LEXIS 26495, at \*36 (4th Cir. Dec. 29, 2008) (noting the "common sense notion" that a

decisionmaker is unlikely to discriminate against a member of her same protected class);

*Hammond v. Chao*, 383 F. Supp. 2d 47, 58 n.2 (D.D.C. 2005) ("It bears notice that [the relevant

supervisor] is an African-American and is therefore in the same protected racial class as plaintiff.

This fact weighs against an inference of discrimination."). For all of these reasons, summary

judgment should be granted to Defendant on Plaintiff's non-selection claim.

## II.     Summary Judgment Should Be Granted On Plaintiff's Claim Concerning Her Removal From the Deputy General Counsel Position.

In or around May-June 2015, Mr. Baker implemented a reorganization in which the

Investigative Law and Legal Training Branch was combined with the General Law Branch to

create a new, combined branch called the Investigative and General Law Branch. (SOF

¶¶ 50-51) The existing Deputy General Counsel of the General Law Branch, Ernest Babcock,

assumed the Deputy General Counsel position of the new, combined branch. As a consequence

of the merging of the two branches, Plaintiff's Deputy General Counsel position was eliminated

and she assumed the position of Section Chief, reporting to Mr. Babcock. (SOF ¶¶ 38-41) Her

grade and pay remained the same, however. (SOF ¶ 42)

To the extent Plaintiff asserts that the placement of Mr. Babcock in the Deputy General

Counsel position of the newly merged branch, and resultant elimination of her Deputy General

Counsel position, was the result of age discrimination, that contention is undermined at the

threshold by the fact that Mr. Babcock was older than her. Plaintiff's year of birth was 1961

(Am. Compl. ¶ 12), whereas Mr. Babcock was born more than a decade earlier. (Babcock Dep.

at 14, stating that he graduated college in 1970). In addition, any claim of discrimination,

whether based on age or gender, also is undercut at the outset by Mr. Baker's favorable treatment of Plaintiff less than a year earlier in recommending her for the Deputy General Counsel position of the Investigative Law and Legal Training Branch. *Waterhouse*, 298 F.3d at 996 (observing that a claim of discrimination is "seriously undercut" when the same decisionmaker "approved the decision to hire [plaintiff] earlier that same year"). As the D.C. Circuit has observed, if Baker "did not want to work with [plaintiff] because of her . . . gender [or age], it would be odd to select her and then immediately start ginning up reasons to dismiss her." *Vatel*, 627 F.3d at 1247.

Consequently, Plaintiff's attempt to characterize the legitimate, non-discriminatory reasons for the elimination of her Deputy General Counsel position face a "significant initial hurdle." *Id.* Although the fact that Baker "initially selected [Plaintiff] does not *alone* suffice for summary judgment, it is probative evidence that [Baker] did not discriminate against" her when her Deputy General Counsel position was eliminated as part of a reorganization less than a year later. *Id.* (emphasis in original).

Ultimately, Defendant has offered a legitimate, non-discriminatory reason for selecting Mr. Babcock to be the Deputy General Counsel of the merged branch and for the resulting elimination of Plaintiff's Deputy General Counsel position which Plaintiff has failed to rebut as pretextual. Mr. Babcock was more experienced as he had been in the Deputy General Counsel position since January 2014 (Babcock Dep. at 8-9; Baker Decl. ¶ 8), whereas Plaintiff still was in her probationary period as she had been in her position only a few months. (Baker Dep. at 57) In addition, Mr. Baker had concerns about Plaintiff's performance during her few months as Deputy General Counsel. (*Id*. at 47, 57)

For instance, Mr. Baker did not feel that Plaintiff kept him sufficiently informed of what was going on in her units (Baker Dep. at 190-92), an impression also shared by Mr. Babcock

who observed that Plaintiff would regularly state that she had "nothing to report" when asked for

a status update at meetings among senior management.  (Babcock Dep. at 88)   Plaintiff

acknowledged that she had a "learning curve" in adjusting to Mr. Baker's expectation of more

feedback and information from her and asserts that she only began to "really get into that

groove" at the time her Deputy General Counsel position was eliminated.  (Grzadzinski Dep.

at 66-67).  She also acknowledged that Mr. Baker had raised performance issues with her as

early as March 2015, within two months of her starting in the Deputy General Counsel position,

advising her at that time of his "disappointment" with her performance, and that he had expected

she would have "'hit the ground running.'"  (Grzadzinski Decl. at 3).  Having recommended

Plaintiff for the position just a few months earlier negates any assertion by Plaintiff that Mr.

Baker's disappointment in her performance so soon after her hiring was motivated by

discrimination.  *Vatel*, 627 F.3d at 1247.

In addition, Mr. Baker believed that Plaintiff's analysis as to whether Chief Division

Counsels required active bar licenses, which was an analysis that Plaintiff had been tasked to

undertake, "made no sense whatsoever and was not well supported by any reasonable type of

legal analysis that I could think of."  (Baker Dep. at 195-196; see also Attachment to Baker Decl.

at GRZ_FBI00086-87)   Not only was Plaintiff's position that active bar licenses not required

"flat out wrong," but rather than helping to effectuate the change as smoothly as possible,

Plaintiff "went out and rallied the troops to object to what was going on, and to come as close to

having a revolt as possible, which was completely contrary to the reason she was hired," which

was to bridge the divide between the OGC and Chief Division Counsel community.   (Babcock

Dep. at 47-48, 87-88; Baker Dep. at 192-93)

To the extent Plaintiff contends Mr. Baker reorganized OGC as a result of a

discriminatory motive directed towards her, any such contention is unsupported by the record.

It is undisputed that Mr. Baker had been contemplating realigning OGC from almost his first day

on the job—long before Plaintiff was even in OGC.  (Baker Dep. at 39-40; Babcock Dep. at 79;

Grzadzinski Dep. at 94-95)  Moreover, as already established, other undisputed evidence –

including Mr. Baker being the same age as Plaintiff and favorable treatment of Plaintiff in

recommending her for the Deputy General Counsel position –is probative evidence that he acted

without gender or age bias towards her.  *Vatel*, 627 F.3d at 1247; *Aka*, 156 F.3d at 1291.

## III.    Summary Judgment Should Be Granted On Plaintiff's Claim Based On Her Removal From The SES

In late 2015, Mr. Baker prepared a required review of Plaintiff's performance during her

probationary period and assessed her not to be performing successfully at the SES level.  (Baker

Decl. ¶ 13 and attachment thereto)   Although Mr. Baker's assessment cited some positive

contributions by Plaintiff during her probationary period, he cited numerous examples of

deficient performance and poor judgment, including failing to schedule Mr. Baker to speak at the

2015 Chief Division Counsel Conference.  Mr. Baker felt that this conference could have helped

to bridge the divide between OGC and the Chief Division Counsel community (Baker Dep. at

192-193) and considered Plaintiff's failure to schedule him as a speaker to be "a significant

omission and an important lapse in judgment."  (Attachment to Baker Decl. at GRZ_FBI000085)

Mr. Baker believed that "maintaining an effective relationship between the CDC [Chief Division

Counsel] community and OGC community [was] critical to the Bureau's success," and that this

omission undermined that effort.  (*Id.*)

Mr. Baker, moreover, observed that this omission was not inadvertent, but intentional.

(*Id.* at GRZ_FBI000084)  And Plaintiff admitted as much.  She testified that she did not schedule

Mr. Baker to speak at the conference because "[t]o be quite frank, the CDCs didn't want to hear

from him." (Grzadzinski Dep. at 111)   Her own admission, therefore, corroborated Mr. Baker's

concerns that she had failed to work to build the relationship between the Chief Division Counsel community and the OGC community.

Mr. Baker also noted continuing deficiencies by Plaintiff in "keep[ing] others – especially her supervisors and other senior leaders – adequately informed" and in an overall lack of communication and collaboration with others in OGC.  (Attachment to Baker Decl. at GRZ_FBI000084)  Mr. Baker considered her lack of communication  as "well-below what is expected of a senior executive."  (*Id*.)  He also noted that, while Plaintiff "can develop and implement solutions to a narrow range of problems, . . . those are strictly limited to issues regarding matters with which she already is well familiar based on her prior experience as a Chief Division Counsel (CDC) in the FBI."  (*Id*. at GRZ_FBI000083)  In his view, she had "not demonstrated an adequate ability to develop and implement innovative solutions to problems in areas outside of her limited core competencies."  (*Id.)*  He also considered her analysis as to whether Chief Division Counsels required active bar licenses to be "unacceptable" and based on "preconceived notions" from her prior role as a Chief Division Counsel.  (*Id*. at GRZ_FBI000086-87).[5]

In October 2015, Mr. Babcock rated Plaintiff "Minimally Satisfactory" on her performance review (Ex. 12 to Glickson Decl. at GRZ-FBI000116), a rating that, when challenged by Plaintiff, was upheld by DOJ's Senior Executive Review Board as well as then FBI Director James Comey.  (Ex. 13 to Glickson Decl.).   Among other things, Mr. Babcock observed that Plaintiff had "not been an active or positive participant in Deputy/Section Chiefs management meetings. She has been reluctant to keep her leadership informed of the matters that

---

[5]     Ultimately, the Department of Justice did require Chief Division Counsels and Associate Division Counsels to submit proof of active bar membership.  (Grzadzinski Dep. at 93; Babcock Dep. at 39-40).

she and her units have been addressing. Her focus from the perspective of a former Chief Division Counsel has not improved the relationship between the CDC community and the Office of the General Counsel." (Ex. 12 to Glickson Decl., at GRZ-FBI000127).

For Plaintiff to have successfully completed her probationary period, she needed to perform at "Level 3." (Ex. 10 to Glickson Decl.; Am. Compl. ¶ 64)  Mr. Baker rated her at a "Level 2." (Attachment to Baker Decl. at 1).  Consequently, Mr. Baker recommended that she "be removed from the SES" and that she "be placed in a position more suitable to her skills within the FBI." (*Id*. at 6)  Because Plaintiff failed to perform successfully during her probationary period, she was removed from the SES, which necessitated her reassignment from the SES level Section Chief position to a non-SES level position. (Turgal Decl. at 4-5)

In the context of evaluating an employer's proffered explanation for a performance-based decision, the appropriate inquiry is not whether the employee agrees with the justification given. The question instead is whether the employer "honestly and reasonably believed in those reasons." *George v. Leavitt,* 407 F.3d 405, 415 (D.C. Cir. 2005).  It is not the Court's role to serve as a "'super-personnel department'" and substitute its judgment on such issues for that of the employer. *See Barbour v. Browner,* 181 F.3d 1342, 1346 (D.C. Cir. 1999); *Forman v. Small,* 271 F.3d 285, 291 (D.C. Cir. 2001).

Thus, Plaintiff cannot create a genuine dispute as to the performance-based justification for her removal from the SES by offering her own opinion about her performance.  She can establish pretext only if the agency made an error in evaluating her performance "'too obvious to be unintentional'" so as to warrant abandoning the Court's "'respect[]'" for an "'employer's unfettered discretion'" in such employment decisions.  *See, e.g., Grosdidier v. Broad. Bd. of Governors,* 709 F.3d 19, 26 (D.C. Cir. 2013) (quoting *Fischbach*, 86 F.3d at 1183); *see also Hampton v. Vilsack*, 685 F.3d 1096, 1101 n. 8 (D.C. Cir. 2012) (the question is whether plaintiff

has adduced evidence that employer's stated belief about the incident was "dishonest or unreasonable"); *Carpenter v. Fed. Nat'l Mortg. Ass'n,* 174 F.3d 231, 236 (D.C. Cir. 1999) (referencing an employer's "'unfettered discretion'" to "evaluate employees").

The record does not reflect any obvious or intentional error in evaluating Plaintiff's performance.  Moreover, Plaintiff's direct supervisor, Mr. Babcock, shared the view that Plaintiff was struggling to perform at the SES level.  Such "consistent" impressions by different managers substantiates the legitimate reason offered and undermines any assertion of pretext. *See Hairston,* 773 F.3d at 273-74.  Finally, as already discussed above, Mr. Baker's favorable treatment of Plaintiff in recommending her for the Deputy General Counsel position less than one year earlier also negates any inference that his assessment of her performance was motivated by gender or age discrimination.  *Vatel*, 627 F.3d at 1247.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that summary judgment be entered in Defendant's favor.

Dated:  December 9, 2021

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: _____ */s/ Jeremy S. Simon*_____
JEREMY S. SIMON
D.C. Bar No. 447956
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov