## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

MARCIANN GRZADZINSKI,

       Plaintiff,

     v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States,

       Defendant.

</td><td>

Civil Action No. 20-1411 (JEB)

</td></tr>
</table>

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff is a former employee of the Federal Bureau of Investigation ("FBI"), who alleges she was discriminated against based on her sex and age (born in 1961) when FBI General Counsel James Baker: (1) failed to select her as Deputy General Counsel of the National Security Law Branch in the FBI's Office of General Counsel ("OGC") but instead recommended her to be Deputy General Counsel of an equivalent branch (the Investigative Law and Legal Training Branch) within the same office, a position that she accepted; (2) allegedly "demoted" her from her position as Deputy General Counsel of OGC's Investigative Law and Legal Training Branch and assigned her to a Section Chief position within OGC; and (3) removed her from the Senior Executive Service ("SES") and placed her back into a GS-15 position based on a failure to satisfactorily complete her one-year SES probationary period. (Am. Compl. ¶ 2) Defendant has moved for summary judgment on each of these claims.

In opposition, Plaintiff has largely conceded that there is no genuine dispute of material fact underlying Defendant's motion and has failed to rebut as pretext the legitimate, non-

discriminatory reasons proffered by the Defendant for the challenged employment actions. Instead, Plaintiff tries to raise an inference of pretext based on the alleged perceptions regarding Mr. Baker's conduct toward women that either lack support in the record or are too vague (such as perceptions of "body language") to constitute competent evidence.  Consequently, Plaintiff has failed to establish a genuine dispute of material fact that would preclude summary judgment in Defendant's favor.

Defendant addresses below Plaintiff's limited arguments in opposition with respect to each of the three employment actions at issue, and otherwise refers the Court to the evidence and argument set forth in Defendant's motion for summary judgment.

## I.    Defendant Is Entitled To Summary Judgment On The Non-Selection Claim

In late 2014, Plaintiff applied for two equivalent Deputy General Counsel positions within the FBI's Office of General Counsel:  Deputy General Counsel for the Investigative Law and Legal Training Branch and Deputy General Counsel for the National Security Law Branch.  (Pl. Resp. to Def. SOF ¶ 10)   Plaintiff was interviewed for both positions (Pl. Resp. to Def. SOF ¶¶ 14-15)[1] and was selected for the Investigative Law and Legal Training Branch position in November 2014 because she was considered to be a better fit for that position.  (Pl. Resp. to Def. SOF ¶¶, 15 20) Plaintiff was notified on January 12, 2015, that the vacancy announcement for the National Security Law Branch position had been cancelled (Pl. Resp. to Def. SOF ¶ 26), and, shortly thereafter, the agency initiated a direct hire procedure to select Trisha Anderson (an existing SES)

---

[1]    Although Plaintiff disputes paragraph 14 of Defendant's Statement of Facts, Plaintiff has offered no record evidence that these executives did not intend that interview to encompass both positions.  Instead, Plaintiff cites to an email stating that Plaintiff had been selected for an interview for the National Security Law Branch position (Ex. 3 to Opp.), but nothing in that email foreclosed the executives from using that interview to evaluate Plaintiff for both positions.  Indeed, in response to a separate paragraph of Defendant's Statement, Plaintiff acknowledges that she was interviewed for both positions.  (Pl. Resp. to Def. SOF ¶ 15)

for that position.  (Pl. Resp. to Def. SOF ¶¶ 21, 26)  Plaintiff alleges that her non-selection to the National Security Law Branch position was the result of discrimination based on her sex and age. Plaintiff's opposition to Defendant's motion for summary judgment on this claim fails for the reasons stated below.

### A.      Plaintiff's Non-Selection Claim is Untimely

By January 12, 2015, Plaintiff knew she had been selected to the Investigative Law and Legal Training Branch position and that the vacancy announcement for the National Security Law Branch position had been cancelled.   Thus, to the extent she challenges her non-selection to the latter position as discriminatory, the 45-day period to contact an EEO counselor began to run as of January 12, 2015. *See, e.g., Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (holding that the EEOC charging period ran from "the time the tenure decision was made and communicated to Ricks").

The EEOC's regulations provide that "aggrieved" employees or applicants for employment who allege they have been discriminated against must first consult an agency EEO counselor before filing a complaint of discrimination and must do so within 45 days of the "matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  Plaintiff did not initiate EEO contact until June 24, 2015 (Pl. Resp. to Def. SOF ¶ 31), far beyond the 45-day period from the date she learned of her non-selection, which is the operative date for the running of the 45-day period.

Plaintiff's attempt to frame the timeliness of her EEO contact around the date of her knowledge of Ms. Anderson's selection to the position, as opposed to Plaintiff's knowledge of *her non-selection*, likewise fails.   First, in this context, Ms. Anderson's selection is properly understood as an "effect" of the alleged discriminatory act being challenged (Plaintiff's non-

selection), which does not result in the commencement of a new 45-day period. *Ricks*, 449 U.S. at 258 ("the only alleged discrimination occurred -- and the filing limitations periods therefore commenced -- at the time the tenure decision was made and communicated to Ricks . . . even though one of the *effects* of the denial of tenure -- the eventual loss of a teaching position -- did not occur until later"); *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007) (same).[2]

Second, Plaintiff admits that she learned of Ms. Anderson's selection on May 6, 2015, which is still over 45 days from her initial EEO contact. (Pl. Resp. to Def. SOF ¶¶ 30-31)  Her argument that "whether Ms. Anderson or Ms. Grzadzinski would actually encumber the position was unclear until the June 2015 reorganization was finalized" misstates the issue and the record. (Opp. at 23)  The FBI formally announced Ms. Anderson's selection on May 5, 2015 via an office-wide email that Plaintiff received no later than May 6, 2015.   (ECF No. 26-3 at ECF pp. 19-20) There was no ambiguity in that announcement as to Ms. Anderson's selection to the National Security Law Branch position. (*Id*.)  Thus, as of May 6, 2015, Plaintiff knew both that she had not obtained the position (a fact she knew several months earlier) and that someone else had been selected for the position.  The 45-day time period thus began to run no later than May 6, 2015.

In arguing otherwise, Plaintiff is attempting to conflate her distinct "demotion" claim with her non-selection claim.  She speculates that Ms. Anderson's selection to the National Security Law Branch position was somehow placed in doubt when Plaintiff was notified on May 22, 2015 that her position (Deputy General Counsel, Investigative Law and Legal Training Branch position) would be eliminated, and appears to argue that this somehow tolled the 45-day period that began

---

[2]      Although *Ledbetter* was abrogated by statute in the context of equal pay act claims, it still remains precedent in other contexts. *See, e.g., Hamer v. City of Trinidad*, 924 F.3d 1093, 1105 (10th Cir. 2019).

to run on May 6, 2015, because Plaintiff allegedly believed that she somehow might have assumed Ms. Anderson's position.[3]  (Opp. at 23)  Plaintiff's alleged subjective belief, however, was entirely speculative and, in the face of the unequivocal May 6, 2015 office-wide announcement of Ms. Anderson's hiring that had not been rescinded, does not provide a basis for tolling the running of the 45-day time period.  *Galloway v. Witt*, 185 F. Supp. 3d 130, 134 (D.D.C. 2016) (setting forth high burden for equitable tolling). Defendant acknowledges that, following the elimination of her position, Plaintiff also contends that she was discriminatorily "demoted" to a Section Chief position instead of being placed into one of the three remaining Deputy General Counsel positions, but that is a separate claim from the non-selection claim, and cannot be used to revive that untimely claim.[4]

## B.    Plaintiff Has Failed To Adduce Evidence Of Discrimination

Plaintiff was selected for one of the two equivalent Deputy General Counsel positions to which she applied, and thus cannot establish that her non-selection to the National Security Law Branch position was "adverse" as required to state a claim.  Her sole response to this argument is to again conflate her demotion claim with this non-selection claim by arguing that "the reorganization happened before Ms. Anderson actually sat in the [National Security Law Branch] DGC chair, so it had been open for Ms. Grzadzinski to take if Mr. Baker had so chosen."  (Opp. at 24)  Again, the National Security Law Branch position was not "open" as of June 2015.  (ECF

---

[3]    Plaintiff does not expressly invoke equitable tolling in her opposition but that appears to be the essence of her argument as the 45-day period would have begun to run at the latest upon Plaintiff's knowledge on May 6, 2015 of Ms. Anderson's selection.  Plaintiff's argument is thus that a subsequent development (being told on May 22, 2015 that her own position would be eliminated) interrupted the running of the 45-day period, which is effectively a tolling argument.

[4]    Plaintiff also states that it is "instructive" that the Administrative Judge did not dismiss the claim for untimeliness.  (Opp. at 23)  To be accurate, the Administrative Judge found Plaintiff's timeliness argument "dubious" but stated she preferred to resolve the claim on substantive rather than procedural grounds.  (Administrative Judge Opinion at 12) (attached hereto)

No. 26-2, Baker Decl. ¶ 6)  To the contrary, the record establishes that Ms. Anderson was selected for that position in February 2015 and that her selection was announced in an unequivocal office-wide email in early May 2015. (Pl. Resp. to Def. SOF ¶¶ 28-30)   While Plaintiff may contend that, as a result of the reorganization, she experienced an adverse employment action (her alleged "demotion"), that is a distinct decision from the decision not to select Plaintiff for the National Security Law Branch position when she had applied in late 2014.  As to that non-selection decision, Plaintiff has failed to establish that she suffered an adverse employment action.

Plaintiff also has failed to adduce any evidence that her selection to the Investigative Law and Legal Training Branch position instead of the National Security Law Branch position was motivated by age or gender discrimination.  Contrary to Plaintiff's assertion (Opp. at 25), it is fatal to Plaintiff's gender claim that a female (Ms. Anderson) was selected to the National Security Law Branch position.  *Cones v. Shalala*, 199 F.3d 512, 517 (D.C. Cir. 2000).  As explained in *Cones*, the "relevant inquiry" in a non-promotion case is "was the plaintiff rejected for the position and a person outside of his protected class selected."  *Id.*  As the Court further explained, "[i]t matters not whether the person ultimately selected was promoted to that position, hired from a pool of outside candidates, or, as in this case, laterally transferred."  *Id.*

Ms. Anderson's selection also is fatal to Plaintiff's "gender-plus-age" theory to the extent the Court were to recognize such a claim.  "'[R]egardless of the label given to [a sex-plus] claim, the simple question posed by sex discrimination suits is whether the employer took an adverse employment action at least in part because of an employee's sex.'"  *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1048 (10th Cir. 2020).   Thus, to state a claim under a sex-plus-age theory, Plaintiff "must show unfavorable treatment relative to an employee of the opposite sex who also shares the 'plus' characteristic," and, for a female sex-plus-age plaintiff, "the relevant

comparator would be an older man." *Id.*  Because a younger female (Ms. Anderson) received the position, Plaintiff has failed to state a sex-plus-age claim.

Although Ms. Anderson's selection is not dispositive of Plaintiff's age discrimination claim, that claim (and any other claim of discrimination) fails for lack of any evidence of pretext. Plaintiff cites to "procedural irregularities, shifting explanations for why Defendant did not select Ms. Grzadzinski, and Ms. Grzadzinski's far superior qualifications to that of the selectee" (Opp. at 26), but none of these arguments has merit.

First, Plaintiff does not actually identify any "procedural irregularities" in connection with the selection decision.  To the extent she contends that the use of the direct hire procedure was a "procedural irregularity," Plaintiff has failed to adduce any evidence that that hiring procedure was somehow improper and, to the contrary, concedes that Ms. Anderson, as an existing SES, was eligible to be hired under that procedure.  (Pl. Resp. to Def. SOF ¶ 25) Ultimately, Plaintiff has failed to identify any deviation from procedure "so irregular and inconsistent" as to make the challenged employment action "unworthy of belief." *Porter v. Shah,* 606 F.3d 809, 816 (D.C. Cir. 2010).

Second, as to the alleged "shifting explanations," Plaintiff misstates the record by suggesting that the reason for cancelling the vacancy for the National Security Law Branch position (an alleged lack of qualified candidates) cannot be reconciled with Plaintiff having been interviewed as a qualified candidate for that position.  (Opp. at 26)   Even if the vacancy was cancelled for the reason stated by Plaintiff (for which Plaintiff provides no supporting record citation), there would be no inconsistency.  Plaintiff had applied to both the Investigative Law and Legal Training Branch and National Security Law Branch positions and was considered to be a

better fit for the former position and thus was selected to that position.[5]   (Pl. Resp. to Def. SOF ¶ 15)   The vacancy announcement for the National Security Law Branch position was cancelled *after* that selection decision and, consequently, that cancellation (even if based on a lack of qualified candidates) is not evidence that Plaintiff's non-selection reflected a lack of basic qualifications on her part.   Instead, after being interviewed for both positions, Plaintiff already had been deemed a better fit for the Investigative Law and Legal Training Branch position, which was the reason for her selection to that position and consequent non-selection to the National Security Law Branch position.[6]   (*Id.*)

Plaintiff has identified no record evidence establishing any shifting explanation for her selection to the one position over the other.   She cites to paragraphs 24, 26 and 44 of her response to Defendant's Statement of Facts, but, to the extent those responsive paragraphs make any assertions, it is that "Mr. Schoolmaster lied regarding the extent of his involvement in and efforts to soli it Ms. Anderson's application materials."   (Pl. Resp. to Def. SOF ¶¶ 24, 26, citing pages 92-94 of Schoolmaster deposition).   Not only is that assertion belied by the cited deposition testimony (which reflects that Mr. Schoolmaster could not recall what role, if any, he had in Ms. Anderson's selection process four years earlier), but it also is immaterial given Mr. Schoolmaster's minor, administrative role in the process.

---

[5]      Among other things, the prior Deputy General Counsel of the Investigative Law and Litigation Branch was an agent and had recommended to Mr. Baker that he continue to have an agent in that position.  (Pl. Resp. to Def. SOF ¶ 16)  Plaintiff was an agent.  (Id. ¶¶ 2, 15)

[6]      Mr. Baker testified that he did not consider Plaintiff to be "qualified" for the National Security Law Branch position "in the way that [he] conceptualized the job."  (ECF No. 27-4, Baker Dep. at 150)  As reflected by his subsequent testimony, Mr. Baker was expressing that Plaintiff was not the best fit for the needs of the National Security Law Branch position, not that she lacked sufficient qualifications to be interviewed for the position.  (*Id*. at 168-70)

Finally, Defendant does not dispute that Plaintiff was sufficiently qualified to be interviewed for the National Security Law Branch position, but that is a distinct question from whether she was (a) better qualified for the Investigative Law and Legal Training Branch position (which was the basis for her selection to that position over the National Security Law Branch position) and (b) less qualified than Ms. Anderson for the National Security Law Branch position (Ms. Anderson's qualifications were the basis for her selection to this position). *See supra* n. 6. As to the former, Plaintiff has offered no evidence that Mr. Baker lacked an honest, good faith belief for believing Plaintiff was better qualified for the Investigative Law and Legal Training Branch position. *Hairston v. Vance-Cooks,* 773 F.3d 266, 274 (D.C. Cir. 2014) (the relevant question in assessing whether an explanation is a pretext for discrimination is whether the employer "'honestly believes in the reasons it offers'"). Indeed, Plaintiff concedes that Mr. Baker testified to that effect and offers no record evidence to call into question that testimony. (Pl. Resp. to Def. Stat. ¶ 15)

In support of her contention that she had "superior qualifications" than Ms. Anderson, Plaintiff also fails to identify record evidence that supports that contention. Instead, she offers her own conclusory opinion and otherwise refers the Court to her resume and that of Ms. Anderson without explaining how that comparison establishes her superior qualifications. (Opp. at 27) As already addressed in Defendant's motion, any such comparison favors Ms. Anderson who, among other things, already held an SES position. (ECF No. 26 at ECF pp. 20-21) Plaintiff also fails to account for Mr. Baker's prior experience working with Ms. Anderson, which was favorable. (Pl. Resp. to Def. SOF ¶¶ 23, 25)

Ultimately, Plaintiff's bare contentions are insufficient to demonstrate a qualifications gap "great enough to be inherently indicative of discrimination." *Adeyemi v. D.C.*, 525 F.3d 1222,

1227 (D.C. Cir. 2008).  At most, Plaintiff has "point[ed] to differences in qualifications that merely indicate a 'close call'" which "does not get [her] beyond summary judgment." *Stewart v. Ashcroft*, 352 F.3d 422, 430 (D.C. Cir. 2003); *see also Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012) ("a disparity in qualifications, standing alone, can support an inference of discrimination only when the qualifications gap is 'great enough to be inherently indicative of discrimination' – that is, when the plaintiff is 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than the successful candidate.").

## II.    Defendant Is Entitled To Summary Judgment On The "Demotion" Claim

As established in Defendant's motion, in late May 2015, Mr. Baker implemented a reorganization in which the Investigative Law and Legal Training Branch was combined with the General Law Branch to create a new, combined branch called the Investigative and General Law Branch.  (Pl. Resp. to Def. SOF ¶¶ 50 51)[7]   The existing Deputy General Counsel of the General Law Branch, Ernest Babcock, assumed the Deputy General Counsel position of the new, combined branch.  As a consequence of the merging of the two branches, Plaintiff's Deputy General Counsel position was eliminated and she assumed the position of Section Chief, reporting to Mr. Babcock, although without a deduction in grade and pay.   (Pl. Resp. to Def. SOF ¶¶ 38-42)

Plaintiff's challenge to this employment action – what she calls "demoting her from her position as a DGC [Deputy General Counsel]" – faces significant hurdles as Plaintiff implicitly acknowledges.   As an initial matter, her discrimination claims are undermined by Mr. Baker's favorable treatment of her less than a year earlier in recommending her for hire.  *Waterhouse v.*

---

[7]    Plaintiff testified that, on May 22, 2015, Mr. Baker informed her that he was reorganizing the Office of General Counsel and that her position would be eliminated.  (ECF No. 27-3, Grzadzinski Dep. at 94)

*District of Columbia,* 298 F.3d 989, 996 (D.C. Cir. 2002); *Vatel v.Alliance of Auto. Mfrs.,* 627 F.3d 1245, 1247 (D.C. Cir. 2011).

In addition, among the Deputy General Counsel, she was the only one in a probationary status at the time of the reorganization. (Pl. Resp. to Def. SOF ¶ 43). Consequently, none of the other Deputy General Counsel are comparators whose favorable treatment in not having their positions eliminated could give rise to an inference of discrimination. *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) (recognizing that "probationary employees and permanent employees are not similarly situated"). Finally, the individual who became Deputy General Counsel over the new, combined branch, Mr. Babcock, was older than Plaintiff, thus negating any claim of age discrimination.

Lacking valid comparator evidence, and facing a record showing favorable treatment by Mr. Baker towards women and older workers (including Plaintiff herself), Plaintiff rests her theory of discrimination on the thinnest of reeds -- that Mr. Baker, though not biased against all women, was biased against women with "strong personalities, including Ms. Grzadzinksi." (Opp. at 9) Plaintiff, however, has failed to adduce any competent evidence to support this theory.

### A.  Plaintiff's Purported Evidence Of A Discriminatory Motive Is Deficient

Plaintiff asserts that Mr. Baker "routinely criticized women for being too 'aggressive' while condoning far more aggressive behavior by male employees," but does not support this assertion with a citation to any record evidence. *See id.* Indeed, the record is devoid of any evidence of Mr. Baker criticizing any woman for being "aggressive."

Plaintiff's apparent support for this assertion is a reference to a statement made by Mr. Baker at his deposition that Plaintiff misstates when she asserts that Mr. Baker "criticized women as 'disagreeable, toxic.'" (Opp. at 9, citing Baker Dep. at 186). As the cited portion of the record

reflects, Mr. Baker described one particular employee as "a difficult, disagreeable, toxic person" during his deposition. (ECF No. 27-4, Baker Dep. at 185:22 to 186:11)  He did not describe that employee as a "toxic woman" or a "disagreeable woman", nor did he characterize "women" as toxic or disagreeable.  (*Id.*)    Importantly, Plaintiff and others also considered that individual to have a disagreeable personality, thus demonstrating that Mr. Baker's testimony about this individual did not reflect any gender bias.  (ECF No. 27-3, Grzadzinski Dep. at 150:16 to 164)  For her part, Plaintiff testified at her deposition that she felt this individual "needed management training or management assistance from me on how to better interact with people."  (ECF No. 27-3, Grzadzinski Dep. at 153:18 to 153:21)

Plaintiff's assertion that Mr. Baker tolerated aggressive behavior by males also is unsupported by the record.  The sole example Plaintiff provides is a single incident in which Mr. McNally threw a chair in the office.  (Opp. at 11)  Far from tolerating this conduct, Mr. Baker had the matter reported to the FBI's Inspection Division for investigation.  (ECF No. 27-4, Baker Dep. at 66:8-67:2; 182:19-183:13)

As for Plaintiff's assertions that Mr. Baker reacted to women and men differently in meetings, she fails to provide a single, specific example.  (Opp. at 9) Instead, she relies on vague, generalized perceptions that fail to provide any context that would allow for an inference of discriminatory treatment.  Plaintiff testified that "I would routinely see Mr. Baker cut women off in meetings, oftentimes skip over the women, would routinely go to a subordinate male to ask the question as opposed to the female that was sitting directly next to him."  (ECF No. 27-3, Grzadzinski Dep. at 56)  But that generalized assertion, even if credited by the Court, does not establish that Mr. Baker was reacting to the gender of the speaker (or any perceived "aggressiveness" combined with gender) rather than some other factor, such as the substance of

what was said.  The other cited testimony is similarly vague and based on individual perceptions of Mr. Baker's "body language" and other equally ambiguous conduct or statements.  (ECF No. 27-14, Bruno Dep. at 32-33, 45; ECF No. 27-38, Sabol Decl. at ECF p. 6; ECF No. 27-16, Sabol Dep. at 13-14; ECF No. 27-20, Wiegand Dep. at 47)[8]

Such vague, subjective perceptions are not sufficient to defeat summary judgment.  *See, e.g., Walden v. Patient-Centered Outcomes Research Inst.*, 304 F. Supp. 3d 123, 140 (D.D.C. 2018) ("Walden's 'subjective belief' that Stencel's 'body language communicated discriminatory intent . . . is not sufficient to overcome summary judgment.'")  At most, they "can only be speculatively attributed to discriminatory animus," and speculation does not suffice as evidence sufficient to withstand summary judgment.  *See, e.g., Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1170 (10th Cir. 1998); *Eke v. CaridianBCT, Inc.*, 490 Fed. Appx. 156, 168 (10th Cir. 2012) (finding the plaintiff failed to provide enough information to understand the context of any alleged discriminatory comments or actions such that they would support an inference of discriminatory animus based on age or gender).

This testimony also is misplaced because Plaintiff has failed to adduce any evidence that the elimination of her position, and resulting placement of Mr. Babock over the new, combined branch, occurred because she was perceived as too aggressive by Mr. Baker.  In this regard, Plaintiff's reliance on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), is misplaced.  There, the record showed the decision not to promote the plaintiff was based at least in part on evaluations that she was too "aggressive."  *See id.* at 251.  Here, Mr. Baker's criticisms regarding Plaintiff's

---

[8]     Plaintiff also cites to an EEO complaint filed by another employee.  (Ex. 13 to Opp. at GRZ_FBI003579)  The cited portion of that document consists of unsworn allegations submitted with an EEO intake form.  Consequently, it is hearsay and not competent summary judgment evidence. *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("'[S]heer hearsay' . . . 'counts for nothing' on summary judgment.")

communication style was that she did not communicate enough, not that she communicated too forcefully.  (ECF No. 26, Def. Mem. at ECF pp. 24-25; see also ECF No. 27-4, Baker Dep. at 190-92)

Plaintiff's so-called "me too" evidence also is insufficient.  (Opp. at 11-12)   Plaintiff has not adduced any competent evidence of any similarly situated employee, but simply cites to unsworn assertions made in other EEO matters involving different contexts in which Mr. Baker is named as the responsible management official (Ex. 15 to Opp.) and a declaration by Plaintiff in which she comments on the allegations in the EEO complaints of other employees.  (ECF No. 27-18, Grzadzinski Supp. Affid. ¶¶ 12-15)  Not only is all of this inadmissible hearsay, but Plaintiff has failed to explain how any of those individuals are comparators with respect to her claim regarding the elimination of her position during the reorganization.[9]  *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (for comparator evidence to be relevant, "[a] plaintiff must . . .  demonstrate that 'all of the relevant aspects of [his] employment situation were nearly identical to those of the [other]' employee").

Plaintiff's discussion of the allegedly more favorable treatment of Mr. Bondy also is misplaced.  (Opp. at 12-13)  To the extent the allegations directed against Mr. Bondy were conduct-based, not performance-based, they are immaterial to Plaintiff's alleged "demotion" claim.[10]  To the extent performance based, Mr. Bondy was not a probationary employee (Pl. Resp. to Def. SOF ¶ 43) and thus was not similarly situated to Plaintiff.  *George*, 407 F.3d at 415 (recognizing that

---

[9]     To the extent Plaintiff references deposition testimony from female employees regarding Mr. Baker's conduct (Opp. at 17-18), the cited testimony is deficient for the same reason.

[10]     Nevertheless, the record establishes that, after hearing the first allegation regarding Mr. Bondy's conduct, Mr. Baker counseled him, and after a third-party reported another allegation, Mr. Baker reported the allegations to the FBI's Inspection Division.  (ECF No. 27-4, Baker Dep. at 143:5-144:6-21)

"probationary employees and permanent employees are not similarly situated").  In addition, the record establishes that Mr. Baker was considering removing Mr. Bondy from his position over performance concerns but that Mr. Bondy announced his retirement before Mr. Baker had decided how to proceed.  (ECF No. 27-4, Baker Dep. at 53:2-5, 57:19-58:9)  Consequently, Mr. Baker's treatment of Mr. Bondy is not evidence of discriminatory animus towards women.

Regarding alleged performance issues by Mr. McNally, who was acting Deputy General Counsel for the National Security Law Branch before Ms. Anderson assumed that position, Plaintiff's allegations also fail to raise any inference of discriminatory animus.  (Opp. at 13)  When Ms. Anderson assumed that role, Mr. McNally had been acting in the position for approximately two years.  (ECF No. 27-3, Grzadzinski Dep. at 190:20-191:1)  Plaintiff testified at her deposition that she believed Mr. McNally was qualified to hold the position on a permanent basis and was treated unfairly in being passed over for the role.  (ECF No. 27-3, Grzadzinski Dep. at 190:20 to 191:13)  That Ms. Anderson was selected over Mr. McNally is further evidence of favorable treatment towards women by Mr. Baker, not discrimination against them.

In addition, believing that Mr. McNally was struggling as a manager and burned out in his role in the National Security Law Branch (ECF No. 27-4, Baker Dep. at 60:1-9; 60:22-5), Mr. Baker moved him to a Section Chief position in a different branch when Ms. Anderson started as Deputy General Counsel for the National Security Law Branch.  (ECF No. 27-4, Baker Dep. at 59:2-22).  Again, Mr. Baker's treatment of Mr. McNally confirms the absence of any gender bias.

Finally, Plaintiff's contention that Defendant's "internal surveys" "highlight gross disparities in women's ability to succeed in OGC leadership" is misleading and does not create an inference of discrimination as to her alleged "demotion."  (Opp. at 15) Plaintiff cites to statistics in a Department of Justice Office of Inspector General Review of Gender Equity in the

Department's Law Enforcement Components that are from a time period *after* Plaintiff's alleged demotion and thus are irrelevant to that claim, (Pl. Ex. 20, at 10), and to information about diversity recruitment efforts, which are also unrelated to the alleged "demotion" claim.  *Id.* at 14.  Plaintiff also cites to a "Gender Analysis Overview," which examined FBI workforce gender demographics over a 12-year period and focused on specific positions and divisions, none of which was the Office of General Counsel.  (Pl. Ex. 21)

Apart from these deficiencies, none of this "evidence" raises any inference of discriminatory animus on the part of Mr. Baker, who recommended Plaintiff to be hired in the first instance and supported Ms. Anderson for the National Security Law Branch position over Mr. McNally, who had been acting in that position.  (Pl. Resp. to Def. SOF ¶¶ 18, 23-24)  It also has no bearing on Plaintiff's retort that, while Mr. Baker may not have been biased against women generally, she was discriminated against because she was a woman with a "strong personality" as none of the cited data includes that category.

### B.  Plaintiff Has Failed To Raise An Inference To Establish Pretext

Defendant has more than satisfied its burden to set forth a legitimate, non-discriminatory reason for Plaintiff's removal from the Deputy General Counsel position by citing to (1) the decision to eliminate one of the four Deputy General Counsel positions as part of a reorganization; (2) Plaintiff's performance struggles in the Deputy General Counsel position as compared to Mr. Babcock's greater experience; and (3) the fact that she was the most junior Deputy General Counsel at the time.  (ECF No. 26, Def. Mem. at ECF pp. 24-26).  While Plaintiff attempts to dispute the Defendant's explanations as lacking support in the record (Opp. at 16-19), Defendant has more than met its burden of production.

For instance, it is undisputed that Mr. Baker had been contemplating realigning the Office of General Counsel from almost his first day on the job—long before Plaintiff was even in the Office of General Counsel.  (ECF No. 27-4, Baker Dep. at 39-40; ECF No. 26-6, Babcock Dep. at 79; ECF No. 27-3, Grzadzinski Dep. at 94-95)   Plaintiff also acknowledged that Mr. Baker had raised performance issues with her in March 2015, within two months of her starting in the Deputy General Counsel position, advising her at that time of his "disappointment" with her performance, and that he had expected she would have "'hit the ground running.'" (ECF No. 26-4, Grzadzinski Decl. at 3).  Mr. Baker, moreover, testified without contradiction in the record that he did not think Plaintiff was succeeding as a deputy at the time he moved her to the Section Chief position.  (ECF No. 27-4, Baker Dep. at 57; ECF No. 26-2, Baker Decl. ¶¶ 7-8))[11]  And, contrary to Plaintiff's assertion, as a probationary SES, she was more junior than the other Deputy General Counsels, including McNally who had been at the SES level since 2008 (Holland Decl. ¶ 4)[12] and McNally's replacement, Ms. Anderson, who also already was a SES.  (Pl. Resp. to Def. SOF ¶¶ 25, 43; see also ECF No. 26-3 at ECF p. 62)

---

[11]     Plaintiff faults Mr. Baker for not being able to recall specific instances at his deposition in April 2018 (approximately three years after the reorganization) of deficient performance by Plaintiff that contributed to his decision to move Plaintiff to the Section Chief position.  (Opp. at 17, citing ECF No. 27-4, Baker Dep. at 116-128).  As explained by Mr. Baker at his deposition, he had "synthesized" her performance issues in the detailed SES Probationary Period Assessment that he prepared in October 2015.  (Pl. Resp. to Def. SOF ¶ 44; ECF No. 26-2 and ECF pp. 7-12) His inability three years after the fact to recall which of the examples specified in that assessment had pre-dated the reorganization does not create an inference of pretext particularly when Plaintiff admitted that Mr. Baker notified her in March 2015 (prior to the reorganization) that her performance was deficient.

[12]     Plaintiff's focus on Mr. McNally ultimately is misplaced because, at the time of the reorganization, Ms. Anderson already had been selected to take the position in which McNally had been acting on a permanent basis.   Her claim that she had seniority over Ms. Anderson (Opp. at 17) fails because Ms. Anderson already held a career SES position (ECF No. 26-3 at ECF p. 62) whereas Plaintiff still was in her one-year probationary period.  This argument also presumes, erroneously, that this position was "open" at the time when the record establishes that it was being filled by Ms. Anderson.

In an effort to show that these legitimate reasons are a pretext for discrimination, Plaintiff argues that Defendant's explanations for her removal are inconsistent with the record; management officials provided "shifting, inconsistent explanations" for her removal; performance standards were applied inconsistently; and "other evidence casts doubt on management officials' stated motives."  (Opp. at 19)  None of these arguments has merit.

*First*, Plaintiff misstates the record when she contends that any one of the four Deputy General Counsels could have been placed in the Section Chief position when her position was eliminated by the reorganization, reducing from four to three the number of Deputy General Counsel positions.  (Opp. at 20)   That argument presumes erroneously that (a) all three Deputy General Counsel positions were open, (b) that Plaintiff was qualified to assume all three positions, and (c) and that one of the three other Deputy General Counsels could have been assigned to the Section Chief position to which Plaintiff was assigned.

As an initial matter, Ms. Anderson already had been selected for the Deputy General Counsel National Security Law Branch position with an expected start date of mid-June 2015 (ECF No. 26-3 at ECF pp. 19-20), and thus that position was not "open" at the time Plaintiff's position was eliminated in late May 2015.  (ECF No. 26-2, Baker Decl. ¶ 6)  And Mr. McNally, who had been acting in that position, was reassigned to a Section Chief position in a different branch once Ms. Anderson assumed the Deputy General Counsel National Security Law Branch position.  (ECF No. 27-4, Baker Dep. at 59:2-22)

As to the Deputy General Counsel Litigation Branch position, which at the time was held by Mr. Bondy, that position required substantial federal court experience (Ex. 2 to Supp. Glickson Decl.) and Plaintiff admittedly had never litigated in federal court. (ECF No. 27-3, Grzadzinski

Dep. at 189:1-9).[13]  Mr. Bondy, moreover, already had advised Mr. Baker of his intention to retire

by the time Mr. Baker decided to eliminate one of the four Deputy General Counsel positions, thus

precluding Mr. Bondy from filling the Section Chief position.  (ECF No. 26-2, Baker Decl. ¶ 6)

The remaining two branches –Investigative Law and Legal Training Branch (led by

Plaintiff) and General Law Branch (led by Mr. Babcock) – were being combined to create the

Investigative and General Law Branch (Pl. Resp. to Def. SOF ¶¶ 50 51), which effectively made

the choice for Deputy General Counsel over the new, combined branch either Plaintiff or Mr.

Babcock.  Mr. Babcock was not a probationary SES, had more experience than Plaintiff, and,

unlike her, Mr. Baker had no performance issues with him. (ECF No. 27-4, Baker Dep. at 63; ECF

No. 26-2, Baker Decl. ¶ 8; Pl. Resp. to Def. SOF ¶ 43)   Consequently, Plaintiff cannot establish

that the reason for her placement in the Section Chief position was a pretext for discrimination.

Plaintiff also contends that Mr. Baker's criticism of her opinion that Chief Division

Counsels did not need to hold active bar licenses could not have been a factor in her demotion

because she had not been asked to render a formal "legal opinion" prior to the reorganization.

(Opp. at 21)  But that misstates the issue by focusing the question erroneously around whether

Plaintiff ever prepared a formal memorandum setting forth her opinion.   Although Plaintiff's

position on this issue was not provided in a formal memorandum, it is undisputed that she

presented her opinion to Mr. Baker on that issue.

Plaintiff admitted at her deposition that Mr. Baker had solicited Plaintiff's opinion on the

issue and that, in response, she told him that she did not belief Chief Division Counsels needed to

---

[13]     When Plaintiff asserts that her performance "far exceeded that of two other male employees serving as DGCs" and suggests those two individuals should have been placed in the Section Chief position instead of her (Opp. at 20), she appears to be referring to Mr. McNally and Mr. Bondy. Because Ms. Anderson was taking over the National Security Law Branch from Mr. McNally, Plaintiff's focus on him is misplaced for reasons already addressed.

hold active bar licenses and provided her reasoning for taking that position.  (ECF No. 27-3, Grzadzinski Dep. at 90-93)   Indeed, Plaintiff acknowledges that this was not an offhand opinion on her part when, in her opposition, she explains her reasoning and why she believed the criticism of her analysis as "flat out wrong" was unfair.  (Opp. at 5 n.2, and 21-22)   Plaintiff also acknowledged at her deposition that Mr. Baker was dissatisfied with her opinion on the bar license issue and "went right past me" and had another attorney, Catherine Chen, do the formal analysis. (ECF No. 27-3, Grzadzinski Dep. at 94)  Thus, the record establishes that Plaintiff never prepared a formal memorandum on this issue because in discussions preceding that step she had advocated against mandatory active bar licenses based on reasoning that Mr. Baker considered to be "below the bar."  (ECF No. 26-2 at ECF p. 11)

The record evidence cited by Plaintiff does not dispute any of these facts, but simply confirms that Mr. Baker had Ms. Chen do the formal legal analysis.  For instance, Plaintiff cites to Exhibit 34 to her opposition as evidence that Ms. Grzadzinski did not possess the legal memorandum on the bar license issue and thus could not have been the one to draft that memorandum.  (Opp. at 4 n.1)  But as that email makes clear, the legal memorandum she is referring to is the one that recommended that active bar membership be mandatory, which had been prepared by Catherine Chen and another individual *after* Plaintiff had offered her misguided opinion on the issue. (Ex. 34 to Opp.; Opp. at 4 n. 1).

Plaintiff also misstates the record when she contends that the bar license issue did not arise until June 2015, after her alleged demotion.  (Opp. at 22)  As the record reflects, that issue was being actively addressed by April 2015.  (Ex. 34 to Opp. at GRZ FBI004670 to 4676)  Moreover, the email exchange Plaintiff cites from June 2015 (Ex. 23 to Opp.) reflects inquiries from outside of the Office of General Counsel after word had circulated that a decision had been made to make

active bar licenses mandatory.   For instance, an email in that chain from an individual from outside the Office of General Counsel was sent to Plaintiff on June 24, 2015, for her "consideration and awareness" expressing concerns from "folks across the bureau" about the change in policy.  (Ex. 23 to Opp. at GRZ_FBI000493; Supp. Glickson Decl. ¶ 4)   Thus, that email does not reflect that the bar license issue arose in June 2015, but that the Office of General Counsel had reached a decision to mandate active bar licenses by that time, confirming that the issue had been under discussion within OGC well before that date.

Plaintiff's assertion that her position on the bar license issue could not have been incorrect because it was the way things had always been done (Opp. at 21) is both illogical and evidence of her deficiencies as a senior executive who is expected to do more than merely propose doing things the way they have always been done without regard to whether such position is legally defensible. Mr. Baker was "alarmed" by Plaintiff's position on this issue. (ECF No. 27-4, Baker Dep. at 195:21-196:4)  He found Plaintiff's legal analysis on this issue to have "made no sense whatsoever and was not well supported by any reasonable type of legal analysis that I could think of."  (*Id*. at 195:21-196:6)   Mr. Baker thought Plaintiff had preconceived views on the topic and did not approach it with an open mind as a result, "her legal analysis on the matter was tendentious, below the bar, and therefore not particularly helpful."  (ECF No. 26-2 at ECF p. 11)

*Second*, Plaintiff's claim that Mr. Baker's explanation for the reorganization and his decision to "demote" Plaintiff had "shifted continually" also is without record support.  (Opp. at 19-20)  Plaintiff asserts Mr. Baker testified that Plaintiff's "success in her position was a 'number one' reason for conducting the reorganization in this manner."  (Opp. at 20)  But Mr. Baker said no such thing.  Rather, in response to a question as to why he removed Plaintiff from the Deputy General Counsel position—*not* why he reorganized OGC as Plaintiff erroneously contends—Mr.

Baker stated: "I did not think that Marcy was succeeding in her position as a deputy at that point in time.  That was number one."  (ECF No. 27-4, Baker Dep. at 57:4-12)  That is consistent with testimony that the reorganization itself was not based on anyone's performance but rather the needs of the office following a thorough operational review.  (*Id.* at 39-41; ECF No. 27-16, Sabol Dep. at 25:5-13)  In fact, the record citations in Plaintiff's opposition support both (1) that Mr. Baker has never stated that the reorganization of OGC was due to Plaintiff's performance (ECF No. 27-16, Sabol Dep. at 25:5-13; ECF No. 27-3, Grzadzinski Dep. at 96:12-17; and ECF No. 27-26, Babcock Dep. at 81:1-13, 83:8-84:5) and (2) that Mr. Baker has consistently stated that his decision to move Plaintiff to the Section Chief position was due to her performance and junior status, as well as the elimination of one of the DGC positions.  (ECF No. 27-4, Baker Dep. at 57:5-2, 90:21-92:10).

*Third*, as to Plaintiff's assertion that performance standards were applied differently, she has failed to identify any relevant comparator.   Among the Deputy General Counsel – which is the group of potentially applicable comparators – she was the only one in a probationary period and thus was not similarly situated on that basis.  Nevertheless, as already addressed, to the extent any of the other Deputy General Counsel were considered by Mr. Baker to have performance issues, Mr. Baker addressed them.  In the case of Mr. McNally, he moved him to a Section Chief in a different branch.  As to Mr. Bondy, Mr. Baker was considering how to proceed when Mr. Bondy notified Mr. Baker of his intention to retire.   Accordingly, Plaintiff's allegation of a disparity in the application of performance standards lacks record support and fails to establish pretext.

*Finally*, as to other alleged evidence of pretext cited by Plaintiff, Defendant already has addressed those assertions in the discussion above.

**III.     Defendant Is Entitled To Summary Judgment On The SES Removal Claim**

Plaintiff acknowledges in her opposition that her basis for contending that her removal from the SES was discriminatory is largely based on the same evidence and argument on which she contends her alleged "demotion" to a Section Chief position was discriminatory.   (Opp. at 27-30)  Accordingly, Defendant incorporates the above discussion as its response to those arguments.

Plaintiff also misunderstands Defendant's summary judgment argument when she contends erroneously that Defendant had argued that her probationary status precluded her from establishing a *prima facie* case.  (Opp. at 28)  That is incorrect.  Defendant's argument was not that her probationary status precluded her from establishing a *prima facie* case, but that her so-called comparator evidence failed to raise an inference of pretext because she was the only Deputy General Counsel in a probationary status.  *George*, 407 F.3d at 415 (recognizing that "probationary employees and permanent employees are not similarly situated").

Plaintiff does not meaningfully respond to that argument, beyond asserting without any competent evidence that Ms. Grzadzinski's probationary status was "irrelevant to the evaluation" that she received.  (Opp. at 28)  Equally baseless is her attempt to call into question Mr. Baker's separate evaluation of her performance as an SES (ECF No. 26-3 at ECF p. 42) by speculating that Mr. Babcock's separately issued performance review somehow did not reflect Mr. Babcock's actual assessment of her performance.  (Opp. at 28)  Not only did Mr. Babcock testify at his deposition about aspects of Plaintiff's poor performance (e.g., ECF No. 27-26, Babcock Dep. at 48 ), but Plaintiff was unsuccessful in her internal appeal to have Mr. Babcock's "minimally successful" rating upgraded.  (Pl. Resp. to Def. SOF ¶ 50)

As to Mr. Baker's separate review, that consisted of a six-page performance assessment detailing numerous specific examples of performance deficiencies.  (ECF No. 26-2 at ECF pp. 7-

12) Plaintiff's assertion that Defendant failed to articulate a "specific basis" for her removal from the SES cannot be reconciled with that detailed assessment.  As to Plaintiff's contention that Mr. Baker criticized her, and not Mr. Babcock, for failing to keep him informed of the plans for the 2015 Chief Division Counsel conference, that is contradicted by record evidence showing Mr. Baker also expressed disappointment to Mr. Babcock about his role in this failing.  (Ex. 1 to Supp. Glickson Decl.)  Plaintiff, however, was responsible for planning the conference (not Mr. Babcock), does not dispute that she had opportunities to brief Mr. Baker but failed to do so, and does not dispute that she intentionally excluded Mr. Baker from being a speaker at the conference. (ECF No. 26-2 at ECF pp. 9-10; ECF No. 27-3, Grzadzinski Dep. at 111).

That failure, moreover, was a concrete example supporting Mr. Baker's criticism of Plaintiff's lack of an organizational vision and deficient leadership skills since, in Mr. Baker's view, it was detrimental to the effort to "maintain[] an effective relationship between the CDC [Chief Division Counsel] community and OGC community [that was] critical to the Bureau's success."  (ECF No. 26-2 at ECF pp. 9-10)  Mr. Baker's written assessment, moreover, is replete with other examples supporting his overall criticism of Plaintiff's performance and precluding any characterization of the reasons for her removal as unduly subjective.  It is such specific examples that "ground[] the[] subjective assessment in more objective facts" and that distinguishes a subjective rationale readily compatible with a grant of summary judgment from one that may require more scrutiny.  *See Hamilton,* 666 F.3d at 1356.

Finally, Plaintiff asserts as evidence of pretext the fact that, of the 139 employees who "began a probationary period in the SES from January 1, 2013-December 31, 2015—only Ms. Grzadzinski and one other employee did not complete the SES probationary period."  (Opp. at 30)  That chart, however, does not reflect discrimination but instead shows that both males and females

of various ages successfully completed the SES probationary period.   Moreover, the "other employee" besides Plaintiff who did not successfully complete the SES probationary period was male, further undermining the relevance of this data to Plaintiff's claims.  (Pl. Ex. 33, entry number 13)

## **CONCLUSION**

For the reasons set forth above, as well as the reasons set forth in Defendant's Motion for Summary Judgment, Defendant respectfully requests that summary judgment be entered in its favor on all of Plaintiff's claims.

Respectfully submitted,

MATTHEW M. GRAVES, DC Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:_____/s/_____
JEREMY S. SIMON, DC Bar # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
Tel: (202) 252-2528
Email: jeremy.simon@usdoj.gov