1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - -

| | | |
|---|---|---|
| MARCIANN GRZADZINSKI | : | CIVIL ACTION NO.: |
| Plaintiff | : | 20-1411(JEB) |
| vs. | : | |
| | : | |
| MERRICK GARLAND, | : | |
| Attorney General | : | |
| Defendant | : | |

- - -

Oral deposition of TONYA FRIDY, Ph.D.,

taken remotely via ZOOM, pursuant to notice, on

Tuesday, November 8, 2022, commencing at or about

10:30 a.m. before Patricia A. Lipski, RPR, CCR, New

Jersey, Notary Public.

- - -

EXHIBIT 2

5

1            TONYA FRIDY, Ph.D., having been duly

2    sworn, was examined and testified as follows:

3                        _ _ _

4    BY MR. SIMON:

5         Q.    Good morning, Dr. Fridy.  Can you

6    please state your full name for the record?

7         A.    Dr. Tonya Fridy.

8         Q.    And may I ask without disclosing

9    your address, where are you participating in the

10   deposition today?

11        A.    At my home, in my office.

12        Q.    Is that in Washington, D.C. or is

13   that in Maryland?

14        A.    Maryland.

15        Q.    I take it you're by yourself; is

16   that correct?

17        A.    Yes, I am.

18        Q.    Dr. Fridy, as I believe you know

19   you're here to testify as a witness brought by

20   Marciann Grzadzinski in United States District Court.

21              You've been identified as a witness

22   in this case by Miss Grzadzinski.

23              Do you understand you're here under

24   a subpoena that was issued in that lawsuit?

25        A.    Yes.

1        Q.      Now, when you spoke to Miss
2   Grzadzinski's attorney, did you speak about the
3   substance of your treatment of Miss Grzadzinski or
4   simply procedural matters related to the subpoena and
5   the deposition?
6        A.      Both.
7        Q.      What do you recall telling Mr. Clark
8   about the substance of your treatment of Miss
9   Grzadzinski?
10       A.      That I had seen her for family
11  counseling and marital counseling, and that my last
12  meeting with her was regarding consulting about her
13  daughter who she had recently adopted.
14               So there were no -- the meeting that
15  you had recalled did not take place for treatment or
16  in terms of evaluating her.
17       Q.      You mentioned a contact that I had
18  referenced.  You're referring to a document I had
19  sent you, an invoice or a billing statement from
20  October 2015?
21       A.      I haven't received any invoice from
22  you regarding this case.  I'm referring to the point
23  I made about my files being closed after seven years
24  in the State of Virginia, and that the last date you
25  referenced, which would have been in that seven years

1   she needed to.

2        Q.   And if I understand you, she would

3   periodically then contact you after therapy concluded

4   in the 2015, 2016 time period?

5        A.   Very, very inconsistently, yes, she

6   would.

7        Q.   What sort of issues do you remember

8   her bringing to your attention or raising with you

9   after therapy concluded in connection with those

10  as-needed consultations?

11       A.   I'm sorry.  What's your question?

12       Q.   Following the completion of therapy,

13  when Miss Grzadzinski would contact you on as-needed

14  basis, what sort of issues do you recall her raising

15  with you?

16       A.   I think the main thing was preparing

17  for her adopted daughter, the death of her husband,

18  and his family, new dating experiences she was

19  having.

20          I don't know if she would call it

21  dating, but she was seeing someone and they were

22  adjusting to their friendship.

23       Q.   Do you ever remember her in those

24  as-needed consultations raising any issues concerning

25  her job?

1    A.    She had a date of retirement and she
2    was looking forward to that and what she was going to
3    do after retiring.
4          I think there was one incident where
5    she had a new administrative assistant who was
6    challenging her authority, but we didn't go into too
7    much of that ongoing.  It was her mentioning how
8    stressful it was at that time.
9    Q.    Do you remember anything else she
10   told you about her job being stressful or any issues
11   she was having at work that were affecting her
12   physically or mentally?
13   A.    I mean she would mention it.  It
14   would not be the focus of therapy, but she would
15   mention from time to time coming in from work how she
16   was -- things were changing there at the
17   organization, and I think they were changing in terms
18   of people coming in and new workers she was assigned
19   to.
20         I didn't get a lot of information
21   from that because it would quickly move into family
22   issues.  My focus with her was family and marriage,
23   and grieving, the situation with her husband.
24   Q.    Do you ever counsel people on issues
25   they're having at work and interpersonal experiences

1   or just with supervisors or performance issues?
2           A.   All of the above, yes, particularly
3   with my police officers and U.S. police officers,
4   yes.
5           Q.   So is it fair to say that you could
6   have addressed those issues more fully with Miss
7   Grzadzinski?
8           A.   Yes, I'm pretty well rounded in
9   that, so if it had been an issue that was causing a
10  concern, to that extent we would have.
11          Q.   What is your understanding as to why
12  you did not delve into any work issues with Miss
13  Grzadzinski more deeply?
14          A.   Well, that wasn't her presenting
15  issues for me.  Her presenting issues had to do with
16  her adjusting to her husband's death and his family,
17  which was very stressful at that time.
18               So whatever the client comes in
19  with, we deal with, and that was not something that
20  seemed to be the focus for her in our hour of
21  sessions.
22          Q.   If you had the perception that
23  work-related issues might be contributing to her
24  anxiety or stress, would you have explored that more
25  fully?

1          A.     Absolutely, if that's what she

2    wanted.

3          Q.     Well, what if she didn't want to

4    address those issues?

5          A.     Well, you know, it's really up to

6    her what she wants to spend her hour on.  Again, at

7    some point it's the client who regulates her

8    treatment.

9          Q.     Is it fair to say then that you did

10   not perceive that Miss Grzadzinski was experiencing

11   work-related stress or anxiety at a level that

12   required your assistance?

13         A.     That wasn't the focus of her primary

14   request with that session.  She was -- when she came

15   in, she would often talk about it, but we would then

16   move into something else that was more, at that time,

17   pressing.

18                It seemed as if she was trying to

19   deal with it at work.

20         Q.     But is it fair to say then that

21   whatever she was communicating to you or how she

22   presented to you with respect to work-related issues,

23   you did not have the perception that those were

24   significant stressors in her life as compared to

25   whatever personal issues she was discussing with you?